J-A01044-20

2020 PA Super 35

| | | |
|---|---|---|
| RONALD KELLY AND PATRICE KELLY, AS ASSIGNEES OF BBK TAVERN, INC. D/B/A THE PRINCETON TAVERN, BY AND THROUGH ITS AUTHORIZED REPRESENTATIVE JOHN BELL | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 2273 EDA 2018 |
| THE CARMAN CORPORATION AND SERGIUS B. CARMAN | : : : : : : | |
| APPEAL OF: THE CARMAN CORPORATION | : | |

Appeal from the Order Entered June 26, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 04825 July Term, 2013

| | | |
|---|---|---|
| RONALD KELLY AND PATRICE KELLY, AS ASSIGNEES OF BBK TAVERN, INC., D/B/A THE PRINCETON TAVERN, BY AND THROUGH ITS AUTHORIZED REPRESENTATIVE, JOHN BELL | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : : : : | No. 2274 EDA 2018 |
| THE CARMAN CORPORATION AND SERGIUS B. CARMAN | : : | |

Appeal from the Order Entered June 26, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 4825 July Term, 2013

J-A01044-20

BEFORE: NICHOLS, J., MURRAY, J., and COLINS, J.*

OPINION BY COLINS, J.:                    **FILED FEBRUARY 12, 2020**

Ronald Kelly and Patrice Kelly (collectively, "the Kellys"), as assignees of BBK Tavern, Inc. ("BBK"), doing business as The Princeton Tavern, by and through its authorized representative John Bell, appeal from the order of June 26, 2018, that: entered a judgment notwithstanding the verdict ("JNOV") in favor of The Carman Corporation ("CC") and Sergius B. Carman ("Mr. Carman") (collectively, "Carman") as to negligence; and ordered a new trial to determine the amount of damages to be awarded for the sole remaining claim of breach of contract by CC only. CC cross-appeals from the same order, which also denied all other issues and claims raised in Carman's post-trial motions. We affirm.

CC "was an insurance broker. BBK obtained insurance through [CC] beginning in 2007. John Bell was the manager of BBK from 2007 through 2010." Trial Court Opinion ("TCO"), No. 2274 EDA 2018, filed March 6, 2019, at 4 (citations to the record omitted).

> [In] 2009, the Kellys . . . filed a civil complaint against numerous defendants averring that, on May 23, 2007, Michael Siuma, while driving under the influence of alcohol, collided with the Kellys' vehicle, thus seriously injuring the driver, Mr. Kelly. The Kellys averred that, prior to driving, Mr. Siuma consumed alcohol at the Princeton Tavern and, in fact, he was served alcohol after he was visibly intoxicated. The Kellys presented negligence claims against Mr. Siuma with regard to his operation of the motor vehicle, negligent entrustment claims with regard to [Marie]

_____

* Retired Senior Judge assigned to the Superior Court.

- 2 -

> Siuma, and claims under "the Dram Shop Act"[3] with regard to all remaining defendants, including BBK[ ("the Dram Shop Action").]
>
>     [3] 47 P.S. §§ 4–493, 4–497.

***Kelly v. Siuma***, 34 A.3d 86, 87 (Pa. Super. 2011) (some footnotes omitted).

> Bell sat with Mr. Carman and showed him the paperwork from the [D]ram [S]hop [Action] sometime in 2009, not long after Mr. Bell received the papers.  N.T., 2/13/2018, at 175-76. . . .
>
> Mr. Bell mentioned the [D]ram [S]hop [Action] to attorney David Lehman, who was doing tax work for BBK.  [***Id.***] at 185-86.  Mr. Bell communicated to Mr. Lehman that he had[ not] heard anything and he wished for Mr. Lehman to call [CC] "as an attorney to make sure that everything was okay."  [***Id.***] at 186.  In June of 2010, Mr. Lehman spoke with [Sherry] Sapienza[, an employee of CC].  N.T., 2/12/2018, at 221.  Ms. Sapienza informed Mr. Lehman that [CC] was in receipt of the formal complaint against BBK in the [D]ram [S]hop [Action].  [***Id.***] at 222-23.  Mr. Lehman informed Mr. Bell of his communication with [CC]; Mr. Bell's understanding was that "everything was okay, and that the coverage was fine, and that it was being taken care of."  N.T., 2/13/2018, at 186.

TCO, No. 2274 EDA 2018, filed March 6, 2019, at 4 (some formatting).

"On July 26, 2010, Attorney Gregory Kowalski, who represented the Kellys in the [D]ram [S]hop [A]ction, spoke with Ms. Sapienza regarding the unanswered complaint[.]"  TCO, No. 2273 EDA 2018, filed May 8, 2019, at 5.  Having received no answer from BBK in the Dram Shop Action, "on August 4, 2010, the Kellys provided an Important Notice of Intent to Enter Default Judgment against them.  On August 25, 2010, the Kellys filed [a] praecipe[] to enter judgment by default against BBK[.]"  ***Kelly***, 34 A.3d at 87.

"On September 14, 2010, twenty days after the Entry of Default Judgment, [the Kellys'] counsel faxed to [CC] a filed copy of the Complaint in [the Dram Shop Action but] did not advise [CC] that a default judgment had been entered." *Id.* at 88. "On or about September 15, 2010, [CC] forwarded the [Kellys'] Complaint to RCA Insurance Group, the third party administrator for State National Insurance Company, Inc. [("SNIC")], the insurance company for [BBK[]]." *Id.* "On September 23, 2010, while beginning the process of opening a file on behalf of [BBK[]], [RCA Insurance Group] pulled a copy of the Civil Docket Report and discovered the entry of the default judgment against [BBK[]]." *Id.*

> On October 8, 2010, BBK[] filed a petition to open the default judgment . . . In its petition to open, BBK[] . . . specifically denie[d] serving alcoholic beverages to Michael Siuma while visibly intoxicated on or about May 23, 2007. . . .
>
> By order entered on December 9, 2010, the trial court denied BBK[]'s petition to open the default judgment.

*Id.* at 87-88, 91.

> On December 20, 2010, Mr. Bell signed an affidavit[12] which indicated that Mr. Bell did not know of or understand the nature of the default judgment from the [Dram Shop Action] until late September 2010. N.T., 2/13/2018, at 227, 239. Mr. Bell's affidavit indicated that Mr. Bell was aware that SNIC intended to withdraw their coverage for the [D]ram [S]hop [Action] through a declaratory judgment action. Mr. Bell's affidavit also indicated that Mr. Bell was aware that BBK would likely be left with no insurance coverage if the [D]ram [S]hop [Action's] default judgment remained and SNIC won their declaratory judgment action.
>
> [12] Defense Exhibit D-26.

[The Kellys'] expert Barbara Sciotti [later] testified as an insurance claims professional with respect to the reporting of insurance claims. N.T., 2/14/2018, at 123. Ms. Sciotti testified that the injury in the instant case resulted from the stipulated default judgment entered against BBK. N.T., 2/12/2018, at 172-73.

＊ ＊ ＊

On March 29, 2012, BBK's attempt to open the default judgment in the [D]ram [S]hop [Action] was exhausted. [**Kelly**, 34 A.3d 86 (affirming denial of BBK's petition to open the default judgment); **Kelly v. Siuma**, 42 A.3d 294 (Pa. filed March 29, 2012) (denying petition for allowance of appeal).] On September 18, 2012, BBK's insurer, SNIC, obtained a declaratory judgment that it owed no duty to defend or indemnify BBK in the [D]ram [S]hop [Action]. According to [the Kellys'] counsel [in the current action], on November 9, 2012, a damages hearing was held before the Honorable Sandra Mazer Moss regarding a stipulated judgment in the [D]ram [S]hop [A]ction. N.T., 2/13/2018, at 15-17. On January 10, 2013, the Kellys, as plaintiffs in the [Dram Shop Action], stipulated with BBK that judgment should be entered against BBK for $5,000,000 (five-million dollars). On January 17, 2013, Judge Moss entered a $5,000,000 (five-million dollar) judgment against BBK in the [Dram Shop Action]. BBK then assigned its rights in the instant matter against [Carman] to the Kellys. N.T., 2/12/2018, at 15[,] 18.

＊ ＊ ＊

On August 2, 2013, [the Kellys] initiated this negligence and breach of contract action by a writ of summons against [CC], The Carman Group, Inc., The Carman Group, LLC, and [Mr.] Carman.

TCO, No. 2274 EDA 2018, filed March 6, 2019, at 1, 3-5 (some footnotes omitted) (some additional formatting).

On November 5, 2013, the Kellys filed their original complaint in the instant case, and, on January 9, 2014, they filed an amended complaint, averring as follows:

19.   As a result of the careless, negligence, breach of contract and other culpable conduct of the Defendants, . . . [SNIC]

- 5 -

refused to indemnify BBK . . . for liability resulting from the [Dram Shop Action]. . . .

## Count I
## Plaintiffs v. Defendants

. . .

24.   The Defendants negligently failed to timely notify [SNIC] of the [Dram Shop Action] and BBK['s] request for indemnity and defense. . . .

27.   As a result of the negligence of the Defendants, a default judgment was entered in the [Dram Shop Action].

28.   By reason of the aforesaid carelessness, negligence and/or recklessness of the Defendants as hereinbefore alleged, BBK . . . suffered financially to its detriment as the insurance coverage which it had paid for did not cover indemnity and defense in the [Dram Shop Action] and forced BBK . . . to enter into a stipulated judgment with [the Kellys] in the amount of Five Million Dollars for which it is liable. . . .

## Count II
## Plaintiffs v. Defendants

. . .

34.   As a direct and proximate result of the Defendants' aforesaid material breach, BBK . . . suffered financially to its detriment as the insurance coverage which it had paid for did not cover indemnity and defense in the [Dram Shop Action] and forced BBK . . . to enter into a stipulated judgment with [the Kellys] in the amount of Five Million Dollars for which it is now liable.

Amended Complaint, 1/9/2014, at ¶¶ 19, 24, 27-28, 34.

[O]n March 23, 2015, the Honorable Marlene Lachman denied Defendants' motion for summary judgment which asserted [the Kellys'] claims were time-barred by the statute of limitations. . . . The Superior Court granted a motion to quash Defendants' appeal of Judge Lachman's denial of summary judgment. ***Kelly v. Carman Corporation***, No. 1276 EDA 2015, order (Pa.Super., July 1, 2015) (order granting application to quash appeal).

TCO, No. 2273 EDA 2018, filed May 8, 2019, at 2 n.4.

On August 1, 2016, the first trial in the instant case commenced before the Honorable Kenneth Powell. N.T., 8/1/2016, at 1. [The Kellys'] counsel, Steven Mezrow, represented to Judge Powell that Judge Moss found [the Kellys'] $5,000,000 (five-million dollar) default judgment "reasonable and appropriate." [*Id.*] at 14. [The Kellys'] counsel argued to Judge Powell that damages were already set in the instant case at $5,000,000 (five-million dollars) due to the judgment from the underlying case:

> MR. MEZOW [sic]: I don't quite understand. . . . This case is one in which there has been, as a result of the conduct of [CC], a judgement [sic] has been entered by a judge of this jurisdiction in the amount of 5 million dollars. That is the damages. That is set. Once they find liability, the damages are what they are. We sited [sic] to you the Supreme Court case. It is axiomatic that in a common law tort action, the tortfeasor is liable for all injuries caused by the negligence or other unlawful conduct.
>
> THE COURT: You are asking for the damages?
>
> MR. MEZOW [sic]: I am going to ask for the Court to enter it. The jury should say: Is there liability? The damage is set at 5 million. The Court should say the damages are a matter of record. It is filed by a judge. Judge Sandra Mazier [sic] Moss filed a judgement [sic] against BBK as a result of the conduct of there being no insurance and a default being entered.
>
> THE COURT: Your case is going to be exactly what they said it is. Essentially what they didn't do.
>
> MR. MEZOW [sic]: We agree and we are done. I want to discuss we think the judgement [sic] of record is the damages. You don't now reassess that.
>
> THE COURT: I didn't understand what you are going to get damages [sic]. There is a 5 million dollar piece out there and a default judgement [sic] has been upheld by the Superior Court. That is entered by another judge of the same jurisdiction. There are no other damages.

[*Id.*] at 26-27.

[Carman] argued to Judge Powell that damages should be limited to the underlying policy limit of $1,000,000 (one-million dollars), and that [the Kellys] should not be permitted to mention $5,000,000 (five-million dollars), let alone recover it. [*Id.*] at 29-30. Judge Powell responded "[t]here is no permission to mention it." [*Id.*] at 30. Judge Powell reiterated that evidence regarding the $5,000,000 (five-million) judgment would not be allowed in. [*Id.*] at 32.

\* \* \*

On August 2, 2016, Judge Powell declared a mistrial. N.T., 8/2/2016, at 3-4.

\* \* \*

Before th[e trial c]ourt, [the Honorable M. Teresa Sarmina,] in 2018, [the Kellys'] counsel indicated that Judge Moss had held a hearing on the merits regarding the $5,000,000 (five-million dollar) damages award and had issued an order for judgment against BBK "for a specific dollar amount" after a hearing on the merits. N.T., 2/12/2018, at 14. [The Kellys'] counsel indicated that "[i]t should be a two, three-day trial. Damages are set." [*Id.*] at 15. [Carman's] counsel countered that "[w]hat [the Kellys'] counsel represented is not anything as to what occurred. There is no ruling that damages are set." [*Id.*] at 17. [Carman's] counsel indicated that Judge Powell ruled that [the Kellys] could not mention the $5,000,000 (five-million dollar) judgment, but never said that damages were established. [*Id.*] at 21. [Carman's] counsel indicated that Judge Moss was unaware that [the] Kelly[s] had released BBK of liability before the stipulated judgment in the [D]ram [S]hop [Action]. [*Id.*] [Carman's] counsel indicated that Judge Lachman denied [Carman's] motion for summary judgment based on several issues, including statute of limitations, without an opinion. [*Id.*] at 23-24.[14]

> [14] While no opinion was filed when [Carman's] motion for summary judgment was denied, the [c]ourt did file an opinion when the decision was appealed to Superior Court.
> . . .

[The trial c]ourt ruled that the $5,000,000 (five-million dollar) judgment could not be mentioned in opening statements, and that the issue would be given more attention by the [c]ourt later. [*Id.*] at 25.

TCO, No. 2274 EDA 2018, filed March 6, 2019, at 2, 5-7 (some additional formatting).

At a jury trial, Attorney Lehman testified that he notified Sapienza of the Dram Shop Action prior to the entry of the default judgment. N.T., 2/12/2018, at 221.

Mr. Carman testified that he "worked as a producer for [CC], soliciting business and getting new accounts, and became the face of [CC] to these clients." TCO, No. 2273 EDA 2018, filed May 8, 2019, at 4 (citing N.T., 2/13/2018, at 138). He further "testified that if BBK had any insurance claims they were to call him and he would be the one responsible for protecting BBK's interests." *Id.* (citing N.T., 2/13/2018, at 138-40).

Bell testified that Mr. "Carman told him that he would be the person to contact if there were any questions or concerns about insurance or claims" and that he "started a business relationship with Mr. Carman as a result of this representation" by buying insurance for BBK "through [CC] beginning in 2007." *Id.* (citing N.T., 2/13/2018, at 167, 171-72). Additionally, Bell testified that "BBK paid premiums [CC], with Mr. Carman telling Mr. Bell when payments were due and personally picking them up." *Id.* (citing N.T., 2/13/2018, at 172-73). Bell further testified that he notified Sapienza and Mr. Carman of and went through the paperwork from the Dram Shop Action with both of them prior to the entry of the default judgment. N.T., 2/13/2018, at 175-76, 184-85. He continued that he did not learn of the default judgment from the Dram Shop Action until late September 2010 and

that, "[u]p until that time, [he] did not know or understand the nature and meaning of a default judgment." *Id.* at 239.

In addition, Attorney Kowalski testified that he notified Sapienza of the Dram Shop Action, after BBK had failed to answer the complaint and before filing the praecipe to enter default judgment:

> I told her we had litigation pending for a dram shop case, which is a case against a bar who serves an openly intoxicated patron.
>
> I identified the bar. I identified all the defendants in the case. I had the complaint in front of me on my computer. I gave her the docket number, which is the docket number of this case.
>
> I gave her the date of the incident, the date of loss. And I explained to her that the case had been proceeding for a significant period of time, that we had deadlines that are approaching that will be expiring, that the case will move without . . . their lawyers, and I explained to her the significance of the injuries.

*Id.* at 282-83. Moreover, Attorney Kowalski authenticated the documentation from the Dram Shop Action assigning BBK's rights in any litigation against CC to the Kellys. N.T., 2/14/2018, at 6-7. The assignment documentation was then moved into evidence as Exhibit P-21.

At the close of the Kellys' case, "[n]onsuit was granted as to defendants Carman Group Inc. and Carman Group[.]" TCO, No. 2274 EDA 2018, filed March 6, 2019, at 1 n.2 (citing N.T., 2/15/2018, at 6).

> The jury found [CC] negligent, and that [CC]'s negligence was a factual cause of harm to BBK. N.T., 2/16/2018, at 175. The jury found that [Mr.] Carman was negligent, and that his negligence was a factual cause of harm to BBK. [*Id.*] The jury

also found that there was an oral contract between BBK and [CC], that [CC] breached this contract, and that this breach was a cause of harm to BBK. [*Id.*] at 175-76.[1]

\* \* \*

On February 26, 2018, both [the Kellys] and [Carman] filed post-trial motions. Additional post-trial motion replies and briefs were filed . . . [Carman] argued in a post-trial brief that the $5,000,000 (five-million dollar) stipulated default judgment in the [D]ram [S]hop [Action] is the harm and injury for the instant case. [Carman's] 4/17/2018 Brief in Support of [Carman's] Motion for Post-trial Relief at 20.

On June 8, 2018, at a post-trial hearing, [Carman's] counsel indicated that [Carman] were not present for and had nothing to do with the [D]ram [S]hop [Action]. N.T., 6/8/2018, at 8. [Carman's] counsel indicated that the underlying case did not involve [Carman] and that [Carman] "weren't there, they weren't invited to be there." [*Id.*] at 11. [Carman's] counsel indicated that [Carman] "never had a chance to contest damages" in the [D]ram [S]hop [Action]. [*Id.*] at 19.

TCO, No. 2274 EDA 2018, filed March 6, 2019, at 2, 5, 7.

In an order dated June 25, 2018, and entered on June 26, 2018, "upon consideration of [Carman's] post-trial motions, and the responses thereto, th[e trial c]ourt found the negligence claims time-barred by the statute of limitations[,] entered [JNOV] for [Carman,]" and "ordered a new trial as to the issue of damages, on the sole remaining claim for breach of contract." *Id.* at 2-3.

On July 23, 2018, CC filed a timely notice of appeal, assigned Docket Number 2273 EDA 2018. No notice of appeal was filed on behalf of Mr. Carman. On July 23, 2018, the trial court entered an order to file a

---

[1] Mr. Carman was not found liable for breach of contract.

concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and, on August 13, 2018, CC complied.[2]  On May 8, 2019, the trial court entered its opinion for No. 2273 EDA 2018.

On July 24, 2018, the Kellys also filed a timely notice of appeal, assigned Docket Number 2274 EDA 2018.  On August 14, 2018, the Kellys filed the following statement of errors complained of on appeal:

> [The Kellys] by and through their attorneys, Pansini & Mezrow hereby file the following Concise Statement of Matters Complained of on Appeal in the above matter, pursuant to Pa. R.A.P. 1925(b):
>
> 1. Whether the trial court committed an error of law or abuse of discretion when it ruled that the instant matter was a claim for "professional negligence".
>
> 2. Whether the trial court committed an error of law or abuse of discretion when it ruled that [the Kellys'] negligence claims in this matter were brought after the statute of limitations for said claims had expired.
>
> 3. Whether the trial court committed an error of law or abuse of discretion when the [trial c]ourt denied [the Kellys'] motion to enter judgment in the amount of $5,000,000.00 against [Carman].
>
> 4. Whether the trial court committed an error of law or abuse of discretion when it ruled that the $5,000,000.00 judgment in the underlying action ***Kelly, et al. v. BBK Tavern, Inc.***, Phila.C.C.P. May Term, 2009, No. 3424 is

---

[2] In its concise statement of errors complained of on appeal, CC confirmed that it was the only defendant appealing and that Mr. Carman was not appealing, stating:  "The July 23, 2018 Order was incorrectly directed to 'Appellants **THE CARMAN CORPORATION and SERGIUS B. CARMAN**.' The only Appellant is The Carman Corporation."  Concise Statement of Errors Complained of on Appeal, 8/13/2018, at 1 n.1 (emphasis in original).

not the [Kellys'] damages as this is a judgment entered against them by a court of law.

5. Whether the trial court committed an error of law or abuse of discretion by failing to follow the coordinate jurisdiction rule with respect to the Honorable Kenneth Powell's ruling that damages are set at $5,000,000.00.

6. Whether the trial court committed an error of law or abuse of discretion in failing to enforce the $5,000,000.00 judgment entered by the Honorable Sandra Mazer Moss.

7. Whether the trial court committed an error of law or abuse of discretion in by [sic] ruling that [Carman] were entitled to due process where damages were already entered in a court of law against BBK Tavern, Inc.

The Kellys' "Statement of Matters Complained of," 8/14/2018, at 1-2. On March 6, 2019, the trial court entered its opinion for No. 2274 EDA 2018.

## Issues Presented for Our Review

The Kellys[3] now present the following issues for our review:

A. Whether the [t]rial [c]ourt erred where this action was filed within the two-year statute of limitations for negligence causes of action.

  i. Whether as no actual injury was inflicted until [SNIC] disclaimed coverage in September, 2012, a corresponding right to institute a suit for damages did not arise until that time period and thus no negligence cause of action accrued until September, 2012.

  ii. Whether the [t]rial [c]ourt erred in ruling this case is claim is a "professional negligence" cause of action.

_____

[3] Although this action is before us as a cross-appeal, in their respective briefs, the Kellys refer to themselves as "Appellants," and Carman refers to themselves as "Appellees." Accordingly, we have chosen to list and to address the Kellys' appellate challenges first, even though the Kellys' appeal was assigned a later docket number than CC's appeal. *See* Pa.R.A.P. 2136.

iii. Whether the [t]rial [c]ourt erred when it ruled that [the Kellys'] negligence claims in this matter were brought after the statute of limitations for said claims had expired in derogation of the Coordinate Jurisdiction Rule and the Law of the Case Doctrine.

B.    Whether the [t]rial [c]ourt erred as the $5,000,000.00 judgement entered by the court against BBK [] in the [D]ram [S]hop [A]ction are the damages in the instant action.

i. Whether the [t]rial [c]ourt erred as after the hearing, Judge Moss communicated and ordered that the five million dollars was fair and reasonable and the [c]ourt would enter judgment against BBK[.]

ii. Whether the [t]rial [c]ourt erred when it ruled that the $5,000,000.00 judgment in the [Dram Shop Action] is not the [Kellys'] damages as this is a judgment of record entered against them by a court of law.

iii. Whether the [t]rial [c]ourt erred by failing to follow the Coordinate Jurisdiction Rule and Rule of the Case Doctrine with respect to the Honorable Kenneth Powell's Ruling that damages are set at $5,000,000.00.

iv. Whether the [trial [c]ourt erred where the $5,000,00.00 judgment fixes the amount of damages in this case.

The Kellys' Brief at 6-7 (trial court answers omitted).

CC now presents the following issues for our review:

[1].    Whether the [$5,000,000] consent judgment and assignment of same was invalid?

[2].    Whether [CC was] entitled to JNOV on [the Kellys'] breach of contract claim because [the Kellys] failed to present any evidence of damages?

[3].    Whether [CC was] entitled to JNOV because [the Kellys] failed to establish standing at trial?

[4].    Whether [CC was] entitled to JNOV on [the Kellys'] breach of contract claim?

[5].    Whether in an alternative to JNOV, [CC was] entitled to a new trial to present precluded evidence.

CC's Brief at 2-4 (trial court's answers omitted).

## Negligence

The Kellys first contend that the trial court improperly granted JNOV on their negligence cause of action, because the current "action was filed within the two-year statute of limitations for negligence causes of action[,]" "[a]s no actual injury was inflicted until [SNIC] disclaimed coverage in September, 2012, a corresponding right to institute a suit for damages did not arise until that time period and thus no negligence cause of action accrued until September, 2012." The Kellys' Brief at 30.

> Our standards of review when considering motions for a directed verdict and [JNOV] are identical. We will reverse a trial court's grant or denial of [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.
>
> There are two bases upon which a [JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

**Reott v. Asia Trend, Inc.**, 7 A.3d 830, 835 (Pa. Super. 2010) (citations and internal brackets omitted).

> Limitations periods are computed from the time the cause of action accrued. 42 Pa.C.S. § 5502(a). Generally, "a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted." **Wilson v. El-Daief**, 600 Pa.

161, 964 A.2d 354, 361 (2009). "Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action." *Fine*[ *v. Checcio*], 870 A.2d [850,] 857 [(Pa. 2005)].

*In re Risperdal Litigation*, No. 22 EAP 2018, 2019 WL 6139189, at *5 (Pa. November 20, 2019).

In Pennsylvania, a cause of action for negligence is controlled by the two-year statute of limitations set forth in 42 Pa.C.S[.] § 5524(2).[4] . . . [L]ack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations. It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period.

*Cappelli v. York Operating Co.*, 711 A.2d 481, 484–85 (Pa. Super. 1998) (*en banc*) (citations and internal brackets and quotation marks omitted).

In the context of an assignee's action against an insurer for breach of its obligation to represent in good faith the rights of the insured, the Supreme Court of Pennsylvania held that "the fact of entry of the judgment itself against the insured constitutes a real damage to him because of the potential harm to his credit rating[.]" *Gray v. Nationwide Mutual Insurance Co.*, 223 A.2d 8, 10 (Pa. 1995). This Court has also found that,

---

[4] Whether the current cause of action is considered "professional negligence" or "ordinary negligence" is irrelevant for determining the statute of limitations, *see* the Kellys' Brief at 36-39, as the statute of limitations for both is two years. *See Ford v. Oliver*, 176 A.3d 891, 900 n.13 (Pa. Super. 2017); *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 571, 574 (Pa. Super. 2007) (professional negligence action must be commenced within two-year statute of limitations); *Murray v. University of Pennsylvania Hospital*, 490 A.2d 839, 841 (Pa. Super. 1985) (two-year statute of limitations is applicable to actions for professional negligence).

- 16 -

where an insurer has denied coverage to a defendant in an underlying case and the defendant assigned its rights against the insurer to the plaintiff, who brought an action against the insurer, "the entry of judgment" in the underlying case is "significant." ***Barr v. General Accident Group Insurance Co. of North America***, 520 A.2d 485, 489 (Pa. Super. 1987). This Court reached that conclusion partially based on ***Gray***'s recognition "that entry of judgment constitutes a real harm because of the potential effect on the insured's credit rating[,]" as well as "factors such as damage to reputation and loss of business opportunities as real harm suffered by entry of judgment." ***Id.***

Additionally, a statute of limitations does not toll while a plaintiff "pursue[s] post-trial remedies" or "while an appeal of the underlying action are pending." ***Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger***, 674 A.2d 244, 248 (Pa. Super. 1996).

In the current action, judgment was entered against BBK on August 25, 2010. This entry of judgment constituted real damage to BBK as soon as it was entered for the reasons given in ***Gray***, 223 A.2d at 10, and ***Barr***, 520 A.2d at 489. Accordingly, this entry of default judgment was the moment that injury was inflicted on BBK and that its right to institute and to maintain a suit arose. ***Risperdal***, No. 22 EAP 2018, 2019 WL 6139189, at *5; ***Cappelli***, 711 A.2d at 484. The statute of limitations period was not tolled while the petition to open the default judgment and the appeals therefrom were pending. ***Robbins***, 674 A.2d at 248.

Consequently, the two-year statute of limitations period began to run on August 25, 2010, and, ergo, was ended by August 27, 2012.[5] The current case was initiated by writ of summons on August 2, 2013, almost a year late. TCO, No. 2274 EDA 2018, filed March 6, 2019, at 1.

However, an exception exists where the statute of limitations will toll if the potential plaintiff is unable to ascertain or to discover the occurrence of the injury. ***See Pocono International Raceway, Inc. v. Pocono Produce, Inc.***, 468 A.2d 468 (Pa. 1983).

> In Pennsylvania, the occurrence rule is used to determine when the statute of limitations begins to run . . . An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. ***Pocono***[,] 468 A.2d [at] 471 . . . Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute. ***Id.***

***Robbins***, 674 A.2d at 246–47.

According to Bell's affidavit and testimony, he did not know of the default judgment in the Dram Shop Action until "late September 2010." TCO, No. 2274 EDA 2018, filed March 6, 2019, at 4 (citing Exhibit D-26; N.T., 2/13/2018, at 227, 239). Even assuming that Bell, as manager of BBK, was unable, despite the exercise of due diligence, to know of the default judgment as soon as it occurred and was not made aware of it until

---

[5] August 25, 2012, was a Saturday; the next business day thereafter was August 27, 2012. 1 Pa.C.S. § 1908 ("Whenever the last day of any . . . period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation").

September 30, 2010, as the latest possible date in September 2010, the negligence action still would have been barred by the two-year statute of limitations as of October 1, 2012.[6]  **See Cappelli**, 711 A.2d at 484; **Robbins**, 674 A.2d at 246-47; TCO, No. 2274 EDA 2018, filed March 6, 2019, at 4 (citing Exhibit D-26; N.T., 2/13/2018, at 191, 227, 239).  Again, the current case was initiated by writ of summons on August 2, 2013, ten months late.  TCO, No. 2274 EDA 2018, filed March 6, 2019, at 1.[7]

Finally, the Kellys contend that "the trial court erred when it ruled that [their] negligence claims in this matter were brought after the statute of limitations for said claims had expired in derogation of the coordinate jurisdiction rule and the law of the case doctrine[,]" because "[t]wo different judges of concurrent jurisdiction rejected [Carman's] legal argument that the statute of limitation would bar [the Kellys'] claims."  The Kellys' Brief at 40 (unnecessary capitalization omitted).

---

[6] September 30, 2012, was a Sunday; the next business day thereafter was October 1, 2012.  **Id.**

[7] The trial court had decided to be generous with BBK and find that there was no proof that Bell and, in turn, BBK knew about the entry of default judgment against BBK until Bell's affidavit dated December 20, 2010.  TCO, No. 2274 EDA 2018, filed March 6, 2019, at 15.  However, even if this later date were considered the beginning of the statute of limitations period, the Kellys' "cause of action for negligence against [Carman would still have been] time-barred as of December 20, 2012.  Thus, as [the Kellys'] instant action was commenced in [August] 2013 it is untimely."  **Id.**

"The law of the case doctrine is comprised of three rules[.]" ***Mariner Chestnut Partners, L.P. v. Lenfest***, 152 A.3d 265, 282 (Pa. Super. 2016). The first two rules are inapplicable to the current appeal, as they concern proceedings following a prior appeal in same case. According to the germane third rule, "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court." ***Id.*** (quoting ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995); citing ***Zane v. Friends Hospital***, 836 A.2d 25, 29 (Pa. 2003)).

> Within this doctrine lies the directive that "judges sitting on the same court in the same case should not overrule each other's decisions," otherwise known as the "coordinate jurisdiction rule." ***Commonwealth v. Daniels***, 628 Pa. 193, 104 A.3d 267, 278 (2014). . . . Only in exceptional circumstances, such as "an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed," may the doctrine be disregarded. [***Starr***, 664 A.2d] at 1332.

***Id.***

The Kellys did not include this claim in their statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), reproduced above in its entirety. "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). Accordingly, the Kellys' claim that their cause of action for negligence is saved by the law of the case doctrine, which includes the coordinate jurisdiction rule, is waived. ***See Commonwealth v.***

***McCandless***, 880 A.2d 1262, 1268 (Pa. Super. 2005) (*en banc*) ("a law of the case claim is subject to waiver").

Consequently, the trial court did not abuse its discretion nor make an error of law by granting JNOV on the Kelly's cause of action for negligence against Carman, as the limitations period had run prior to the initiation of the current case. ***Risperdal***, No. 22 EAP 2018, 2019 WL 6139189, at *5; ***Reott***, 7 A.3d at 835.[8]

---

[8] CC's challenge as to whether the Kellys established that CC owed BBK a duty beyond procuring an insurance policy appears to relate only to the Kellys' cause of action for negligence. CC's Brief at 52-62. The case heavily relied upon by CC in support thereof, ***Wisniski v. Brown & Brown Insurance Co. of PA***, 906 A.2d 571 (Pa. Super. 2006), *cited in* CC's Brief at 52-53, 57-59, 61-62, involved a negligence action, not a breach of contract. ***Id.*** at 575. Moreover, "a legally recognized duty that the defendant conform to a standard of care" is an element of a negligence claim and not of a breach of contract claim. ***Reason v. Kathryn's Korner Thrift Shop***, 169 A.3d 96, 101 (Pa. Super. 2017) (quoting ***Estate of Victor Newell v. Montana West Inc.***, 154 A.3d 819, 822 (Pa. Super. 2017)); ***compare id.*** (elements of negligence) ***with Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.***, 137 A.3d 1247, 1258 (Pa. 2016) (elements of breach of contract).

Preliminarily, we note that this appellate claim was not included in CC's statement of questions involved, CC's Brief at 2-4, and "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a).

However, even if this question had been included in CC's statement of questions involved, as we conclude that the Kellys' negligence claim was barred by the statute of limitations, this issue is now moot, and we need not address it. ***See*** CC's Brief at 52-62.

### Damages

Next, the Kellys contend that that "the $5,000,000.00 judgment entered by the court against BBK" in the Dram Shop Action constitutes "the damages in the instant action." The Kellys' Brief at 43. The Kellys add that "the trial court erred by failing to follow the coordinate jurisdiction rule and rule of the case doctrine with respect to the Honorable Kenneth Powell's ruling that damages are set at $5,000,000." *Id.* at 56.

The trial court had found that "it was clear error to set damages before trial based solely on the settlement amount from the [Dram Shop Action] which involved different parties." TCO, No. 2274 EDA 2018, filed March 6, 2019, at 9. The trial court additionally believed that it was not bound by Judge Powell's "discussions" before the first trial, because "the clear error exception to the coordinate jurisdiction rule" applies. *Id.* at 8-9.

> [I]t is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.
>
> * * *
>
> Thus, when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion.
>
> * * *
>
> We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

***ACE American Insurance Co. v. Underwriters at Lloyds and Cos.***, 939 A.2d 935, 939 (Pa. Super. 2007) (citations omitted).

Preliminarily, pursuant to our review of the record, we find nothing in the notes of testimony from the first trial indicating that Judge Powell explicitly stated that damages in the current action must be $5,000,000 or anything else about damages already being established. First, after Carman's counsel contended that it "would be prejudicial to our client should [the Kellys] be allowed to mention 5 million dollars and let alone recover[,]" Judge Powell answered, "There is no permission to mention it." N.T., 8/1/2016, at 30. Shortly thereafter, Carman's counsel confirmed that the Kellys "are not allowed to bring in evidence of the 5 million dollar judgment[,]" and Judge Powell replied, "Right." ***Id.*** at 32. Accordingly, His Honor only ruled that the $5,000,000 judgment could not be mentioned during trial. We find no additional rulings by Judge Powell on the issue of the applicability of the $5,000,000 default judgment from the Dram Shop Action to the question of damages in the current action. ***See generally id.*** As there was no prior ruling by a trial judge of coordinate jurisdiction, the law of the case doctrine is inapplicable. ***Mariner Chestnut***, 152 A.3d at 282.

Assuming the law of the case doctrine were applicable, we would agree with the trial court, TCO, No. 2274 EDA 2018, filed March 6, 2019, at 8-9, that the doctrine could be "disregarded" in this case, because the "the prior holding was clearly erroneous and would create a manifest injustice if

followed[.]" *Mariner Chestnut*, 152 A.3d at 282. We find the case of *Brakeman v. Potomac Insurance Co.*, 344 A.2d 555 (Pa. Super. 1975), to be instructive. In *Brakeman*, *id.* at 555, the appellant was involved in a motor vehicle collision with David Baker. Baker's insurance company asserted that the notice of the collision that it received from Baker was "unduly late" and "refused to defend the claim against Baker." *Id.*

> The appellant filed suit against Baker . . . and . . . a verdict in the sum of Ten Thousand ($10,000.00) Dollars, the exact amount of the Baker's insurance coverage, was directed by the lower court, by agreement of the parties, and without actual trial. . . . [T]he [insurer] did not participate in that action.

*Id.* at 555-56. The appellant "brought suit directly against [Baker's insurer] to recover the amount of his verdict against the insured." *Id.* at 556. After a jury found that the notice of the collision was not "unduly late," a verdict of $10,000 was entered, equal to the amount awarded in the underlying action. *Id.* The insurer had "contested . . . the reasonableness of settlement" in the underlying case, noting that the facts of the accident, including damages, "were never proven in any judicial forum." *Id.* at 559. Instead, the settlement figure in the underlying matter had been "reached solely by virtue of the fact that it was the maximum of the insurance coverage enjoyed by the alleged tortfeasor insured." *Id.* On appeal, this Court held that the question of damage "may be litigated by the insurer in the instant case." *Id.* (citing *Martinique Shoes, Inc. v. New York Progressive Wood Heel Co.*, 217 A.2d 781 (Pa. Super. 1996)). The Supreme Court of Pennsylvania affirmed this Court's decision and agreed

that the insurer should be allowed to litigate the amount of damages. ***Brakeman v. Potomac Insurance Company***, 371 A.2d 193 (Pa. 1977).

Analogously, the current action also stems from a motor vehicle collision, where the injured party – here, the Kellys -- sued those responsible for the collision – including BBK. ***Compare Brakeman***, 344 A.2d at 555-56, ***with*** TCO, No. 2274 EDA 2018, filed March 6, 2019, at 4 (citing N.T., 2/14/2018, at 20-21), ***and Kelly***, 34 A.3d at 87. The insurance company of a defendant in the underlying suit – *i.e.*, BBK's insurer, SNIC -- likewise refused to provide coverage after receiving late notice. ***Compare Brakeman***, 344 A.2d at 555, ***with*** TCO, No. 2274 EDA 2018, filed March 6, 2019, at 5, ***and Kelly***, 34 A.3d at 88. Similarly, a judgment -- the $5,000,000 -- was entered in the underlying litigation by agreement of the parties to that matter, without an actual trial. ***Compare Brakeman***, 344 A.2d at 556, ***with*** TCO, No. 2274 EDA 2018, filed March 6, 2019, at 3 (citing N.T., 2/12/2018, at 15, 18; N.T., 2/13/2018, at 15-17). Also like ***Brakeman***, 344 A.2d at 556, no one affiliated with the defendant's insurance was a party to the underlying suit, but a second action was brought to recover the damages awarded in the underlying suit. TCO, No. 2274 EDA 2018, filed March 6, 2019, at 1, 3. Albeit that ***Brakeman*** involved a second lawsuit against an insurance company that refused to provide coverage, 344 A.2d at 556, while the current appeal involves a second lawsuit against an insurance broker whose inactions precluded the insurance company from providing coverage, TCO, No. 2274 EDA 2018, filed

March 6, 2019, at 1, we find this distinction immaterial, as both cases involve allegations that a defendant's choices barred an insured from receiving an insurance payment. *Compare Brakeman*, 344 A.2d at 555, *with, e.g.*, TCO, No. 2274 EDA 2018, filed March 6, 2019, at 3-5 (citing N.T., 2/12/2018, at 221-23; N.T., 2/13/2018, at 175-76, 184-86), *and* TCO, No. 2273 EDA 2018, filed May 8, 2019, at 5 (citing N.T., 2/13/2018, at 280-89). *Brakeman* and the current action otherwise continue their parallels as the defendants in both contested the reasonableness of the judgment awarded in the underlying case, because the amount of damages was never proven in any judicial forum but was merely the result of a settlement agreement that did not involve the party actually being asked to pay the settlement figure. *Brakeman*, 344 A.2d at 555-56, 559, *with* TCO, No. 2274 EDA 2018, filed March 6, 2019, at 3, 6-7 (citing N.T., 8/1/2016, at 29-30; N.T., 2/12/2018, at 15, 18; N.T., 6/8/2018, at 8, 11, 19).

As the facts and procedural history of *Brakeman* correspond so readily to those of the current appeal, we must follow the this Court's conclusion of *Brakeman*, 344 A.2d at 559 (citing *Martinique*, 217 A.2d 781), and the Pennsylvania Supreme Court's affirmance thereof, 371 A.2d 192, and we therefore hold that CC must be allowed to litigate the question of damages.

Consequently, where (1) a judgment had been entered in an underlying case, (2) the amount of the judgment in the underlying case was not established by evidence of record, and (3) a second case is initiated

against a defendant who was not involved in the underlying case but whose actions or inactions resulted in the denial of insurance coverage to a defendant in the underlying case, the defendant from the second case has the right to challenge the amount of damages awarded in the second case; in other words, the amount of the judgment in the underlying case is **not** automatically set as the damages in the second suit. **See Brakeman**, 344 A.2d at 555-56, 559 (citing **Martinique**, 217 A.2d 781), *aff'd*, 371 A.2d 193.[9]

_____

[9] When the federal court has applied Pennsylvania law to similar factual and procedural situations, it has reached the same result. **See Ultramed, Inc. v. Beiersdorf-Jobst, Inc.**, 98 F. Supp. 2d 609, 611 (M.D. Pa. 1998) ("if no notice is given, an indemnitee has the burden of justifying the payment of damages by offering against the indemnitor in a second action practically the same evidence relied on to establish the case against the indemnitee in the first action, as well as the reasonableness of the settlement" (citing **Martinique**, 217 A.2d 781); ergo, where the defendant "received no notice of the initial action or the settlement," the "defendant will have the opportunity to dispute . . . the amount paid"); **Daily Express, Inc. v. Northern Neck Transfer Corp.**, 490 F. Supp. 1304, 1307 (M.D. Pa. 1980) (where indemnitee settles a claim against him, "he assumes the risk in an action against the indemnitor of proving . . . that the amount of settlement was reasonable" (citing **Martinique**, 217 A.2d 781)).

"We may use decisions from other jurisdictions 'for guidance to the degree we find them useful and not incompatible with Pennsylvania law.'" **Newell**, 154 A.3d at 823 n.6 (quoting **Trach v. Fellin**, 817 A.2d 1102, 1115 (Pa. Super. 2003) (*en banc*)).

In conclusion, we find that the trial court did not abuse its discretion by granting a new trial on the issue of damages on the sole remaining claim of breach of contract by CC. *ACE*, 939 A.2d at 939.[10]

**Breach of Contract**

CC contends that the Kellys failed to establish any of the elements required for a breach of contract claim and that the trial court should have granted JNOV on this cause of action, as well. CC's Brief at 46-48, 52-57, 63-66.[11]

> It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and, (3) resultant damages. Additionally, it is

---

[10] As we find that a new trial on damages is warranted, we need not address CC's assertion that the trial court in the current case should have held that the $5,000,000 judgment from the Dram Shop Action was invalid, because it was "created contemporaneously with [the] assignment[] containing a release and covenant not to execute." CC's Brief at 41. Assuming, for argument's sake, that we were to address this question, we would note that CC has provided us with no precedential Pennsylvania law to support its allegation that post-assignment, stipulated judgments must be rejected "due to their tendency to foster fraud and collusion." *Id.* at 41-42 (citing cases from the federal District of New Jersey and from Connecticut and Texas state courts).

Moreover, any challenge by CC to the excessiveness of a potential damages award on remand is premature. *See id.* at 43-44 (citing *Ammon v. McCloskey*, 655 A.2d 549 (Pa. 1995); *Gray*, 223 A.2d 8; *Cowden v. Aetna Casualty and Surety Co.*, 134 A.2d 223, 229 (Pa. 1957)).

[11] Our standard of review for the grant or denial of JNOV remains the same. *Reott*, 7 A.3d at 835.

- 28 -

axiomatic that a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties.

***Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.***, 137 A.3d 1247, 1258 (Pa. 2016) (citations and internal quotation marks omitted).

According to CC: (1) the Kellys provided no evidence or insufficient evidence of an oral contract between BBK and CC; (2) CC was not required to provide any service beyond procuring the insurance policy with SNIC, meaning no breach occurred; and (3) the Kellys failed to present any evidence of damages. CC's Brief at 46-48, 52-57, 63-66.

*The Existence of a Contract*

First, we consider whether the evidence of record established all of the essential elements of a contract. ***Meyer***, 137 A.3d at 1258.

> Before a contract can be found, all of the essential elements of the contract must exist. Therefore, in determining whether an agreement is enforceable, we must examine whether both parties have manifested an intent to be bound by the terms of the agreement, whether the terms are sufficiently definite, and whether consideration existed. If all three of these elements exist, the agreement shall be considered valid and binding.

***Cardinale v. R.E. Gas Development LLC***, 74 A.3d 136, 140 (Pa. Super. 2013) (quoting ***Johnston the Florist, Inc. v. TEDCO Construction Corp.***, 657 A.2d 511, 516 (Pa. Super. 1995) (*en banc*)).

Bell testified that Mr. Carman, in his capacity as an agent of CC, told Bell that he would be the person to contact if there were any questions or concerns about insurance or claims. TCO, No., 2273 EDA 2018, filed May 8, 2019, at 4 (citing N.T., 2/13/2018, at 167, 171-72). Mr. Carman testified

that, when a customer had an insurance question or claim, they were to call him and he would be the one responsible for protecting the customer's interests. *Id.* (citing N.T., 2/13/2018, at 138-40). This evidence established that the parties orally manifested their intent to agree to the sufficiently definite terms that Mr. Carman was to be BBK's direct contact for insurance claims and that he would protect BBK's interests after being notified of a claim. *Meyer*, 137 A.3d at 1258; *Cardinale*, 74 A.3d at 140; TCO, No. 2273 EDA 2018, filed May 8, 2019, at 16.

Additionally, pursuant to our review of the record, we concur with the trial court that --

> [t]here was evidence that consideration was bargained for in the exchange of this promise. There was testimony [from Bell and Mr. Carman] that Mr. Carman solicited for new business and accounts, and offered to serve as the direct and personally responsible contact at [CC] to gain BBK's insurance business. [Bell also testified that] Mr. Carman did gain BBK's insurance business, and BBK paid premiums to [CC], with Mr. Carman telling Mr. Bell when payments were due and picking them up directly.

TCO, No. 2273 EDA 2018, filed May 8, 2019, at 16; *see also id.* at 4 (summarizing Bell's and Mr. Carman's testimony) (citing N.T., 2/13/2018, at 138-40, 167, 171-73). Having thereby established that consideration existed, all three of the elements needed to find a contract therefore existed, and the agreement between BBK and CC was properly considered valid and binding. *Cardinale*, 74 A.3d at 140.

- 30 -

### *A Breach of the Contract*

Next, we consider whether a breach of this contract occurred. ***Meyer***, 137 A.3d at 1258. CC argues that it was not required to provide any service beyond procuring the insurance policy for BBK with SNIC; it continues that, since it obtained said policy, it did not breach any contract with BBK. CC's Brief at 52-57. We disagree. Both Bell and Mr. Carman testified that Mr. Carman, while serving as CC's agent, told Bell that he would handle any insurance claims for BBK and that he would protect BBK's interests. N.T., 2/13/2018, at 138-40, 167, 171-73; TCO, No., 2273 EDA 2018, filed May 8, 2019, at 4. Thus, their agreement went beyond merely obtaining an insurance policy but also included Carman protecting BBK's interests after being notified of a claim. Failure to do so therefore would constitute a breach of this agreement.

Multiple witnesses testified that they informed CC's agents about the Dram Shop Action against BBK: Bell testified that he notified both Sapienza and Mr. Carman, N.T., 2/13/2018, at 175-76, 184-85; Attorney Lehman testified that he notified Sapienza, N.T., 2/12/2018, at 221; and Attorney Kowalski testified that he not only notified Sapienza but provided her with detailed information about the Dram Shop Action, N.T., 2/13/2018, at 282-83. As the trial court acknowledged, there was copious testimony that "Mr. Carman failed to act as the responsible, direct contact at [CC] for BBK's insurance claim, and failed to protect BBK's interests after being notified of BBK's claim." TCO, No. 2273 EDA 2018, filed May 8, 2019, at 16; ***see, e.g.***,

N.T., 2/13/2018, at 239 (Bell's testimony about his lack of awareness or understanding of the default judgment in the Dram Shop Action until late September 2010), 282-83 (Attorney Kowalski's testimony about the progression of the Dram Shop Action); Exhibit D-26 (Bell's affidavit); **see also Kelly**, 34 A.3d at 87-88, 91 (history of entry of default judgment in Dram Shop Action). Thus, by failing to do what its agent promised it would do, CC breached its contract with BBK. **Meyer**, 137 A.3d at 1258.

### *Resultant Damages*

As for the last element of a breach of contract claim, resultant damages, **id.**, CC urges this Court to determine that "the trial court should have granted [CC] JNOV on [the Kellys'] breach of contract claim because [the Kellys] failed to present any evidence of damages." CC's Brief at 46.

After a thorough review of the record and the briefs of the parties, we concur with the findings of the trial court:

> There was evidence of real damages from this breach of contract in the entry of judgment against BBK. [The Kellys], as assignees bringing an action against an assignor's insurance broker, satisfied any requirement to prove real damages with evidence of the stipulated default judgment entered against BBK. [**See** N.T., 2/12/2018, at 15, 18.] While the rulings of a prior judge . . . prevented [the Kellys] from putting evidence or testimony of the amount of the $5,000,000 (five-million dollar) stipulated default judgment before the jury, [the Kellys] have made a record of damages. [N.T., 8/1/2016, at 30, 32. The Kellys'] expert Barbara Sciotti testified that BBK suffered a default judgment in the [D]ram [S]hop [Action]. [N.T., 2/12/2018, at 172-73; N.T., 2/14/2018, at 123. The Kellys] established that this default judgment resulted from [Carman's] breach of contract. Thus, there was a sufficient basis for an inference of real, actual damages. At the post-trial stage, th[e trial c]ourt

> ordered a new trial, only as to damages, to allow [the Kellys] to prove their [amount of] damages and to allow [CC] to challenge [the Kellys'] proof.

TCO, No. 2273 EDA 2018, filed May 8, 2019, at 17.[12]

---

[12] We acknowledge that the trial court's grant of a new trial on damages relied greatly on *Shiflett v. Lehigh Valley Health Network, Inc.*, 174 A.3d 1066 (Pa. Super. 2017) ("*Shiflett I*"), which has subsequently been reversed by the Supreme Court of Pennsylvania. 217 A.3d 225 (Pa. filed September 26, 2019) ("*Shiflett II*").

Nevertheless, we note that the basis for Supreme Court's reversal in *Shiflett II* is inapplicable to the current appeal, because the current appeal has a different procedural posture to *Shiflett II*. Unlike in *Shiflett II*, the jury never entered a damage award in the current case. Consequently, the "general-verdict rule" from *Halper v. Jewish Family & Children's Services*, 963 A.2d 1282 (Pa. 2009), discussed in *Shiflett II*, 217 A.3d at 226, is irrelevant to the current matter, and a new trial on damages hence has not been waived.

Additionally, the portion of *Shiflett I* relied upon by the trial court was not rejected by the Supreme Court in its opinion and is supported by other, extant case law. The trial court quoted *Shiflett I* for the principle that "[a] court has discretion to hold a new trial solely on the issue of damages if: '(1) the issue of damages is not 'intertwined' with the issue of liability, and (2) ... the issue of liability has been 'fairly determined.' " TCO, No. 2273 EDA 2018, filed May 8, 2019, at 17 (quoting *Shiflett I*, 174 A.3d at 1092). For this rule, *Shiflett I*, 174 A.3d at 1092, had quoted *Mirabel v. Morales*, 57 A.3d 144, 152 (Pa. Super. 2012), and cited to *Kiser v. Schulte*, 648 A.2d 1, 7–8 (Pa. 1994); *Troncatti v. Smereczniak*, 235 A.2d 345, 346 (Pa. 1967); *Kraner v. Kraner*, 841 A.2d 141, 147 (Pa. Super. 2004); *Lambert v. PBI Industries*, 366 A.2d 944, 955–57 (Pa. Super. 1976), all of which are still valid law. In addition, the trial court referenced *Shiflett I* for the following concepts: "'[L]iability is not intertwined with damages when the question of damages is readily separable from the issue of liability.' The liability issue has been 'fairly determined' when liability has been found 'on clear proof' under circumstances that would not cause the verdict to be subject to doubt." TCO, No. 2273 EDA 2018, filed May 8, 2019, at 17-18 (quoting *Shiflett I*, 174 A.3d at 1093). For these concepts, *Shiflett I* had quoted *Mirabel*, 57 A.3d at 152 n.8, and *Lambert*, 366 A.2d at 956, both of which, as mentioned above, are still valid law.

*(Footnote Continued Next Page)*

* * *

The Kellys thereby established the existence of an oral contract between BBK and CC, that CC breached said contract, and that damages resulted from that breach and therefore fulfilled the elements of a cause of action for breach of contract by CC. **Meyer**, 137 A.3d at 1258.

## Standing

CC next states that the trial court "should have granted" JNOV in its favor, because the Kellys "failed to establish standing," maintaining that the Kellys "failed to present any evidence at trial of the existence of the alleged assignment." CC's Brief at 48, 51.[13] CC continues that "[t]he mere fact that [the Kellys] pleaded that they are the purported assignees of [BBK] and attached the purported (redacted) Assignment Agreement to their [amended complaint] only goes to the sufficiency of the pleading." *Id.* at 50.[14]

*(Footnote Continued)* ————————

For these reasons, we hold that the trial court's decision in the instant action to grant a new trial was not affected by **Shiflett II**.

[13] The Kellys' counsel does not contest that an effective assignment is possible, admitting that, in such circumstances, "the assignee stands in the shoes of the assignor and assumes all of his rights." CC's Brief at 49 (citing **Smith v. Cumberland Group, Limited**, 687 A.2d 1167, 1172 (Pa. Super. 1997)); *see also Bayview Loan Servicing LLC v. Wicker*, 163 A.3d 1039, 1045 (Pa. Super. 2017) ("[w]here an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights"), *aff'd*, 206 A.3d 474 (Pa. 2019).

[14] Our standard of review for the grant or denial of JNOV remains the same. **Reott**, 7 A.3d at 835.

- 34 -

However, the Kellys' counsel from the Dram Shop Action, Attorney Kowalski, testified in the current action and authenticated the assignment documentation. N.T., 2/14/2018, at 6-7. The assignment documentation was then moved into evidence as Exhibit P-21. CC offered no rebuttal evidence. CC's assertion that there was no evidence of the assignment thus is belied by the record.

**New Trial as Alternative to JNOV**

CC urges this Court to grant a new trial so that it can present additional evidence. CC's Brief at 66.[15]

CC provided no citations to the Rules of Evidence, to case law, or to any other supporting authority for this issue; CC's last appellate challenge is thus waived. Pa.R.A.P. 2119(a) (argument shall include citation of authorities); *see also, e.g.*, *Commonwealth v. Spotz*, 18 A.3d 244, 281 n.21 (Pa. 2011) (without a "developed, reasoned, supported, or even intelligible argument[, t]he matter is waived for lack of development"); *In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) ("The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities[; t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority" (internal citations and

_____

[15] Our standard of review for the grant or denial of a new trial remains the same. *ACE*, 939 A.2d at 939.

quotation marks omitted)); ***Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa. Super. 2006) (explaining appellant's arguments must adhere to rules of appellate procedure, and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention).

Assuming *arguendo* it were not waived, CC's contention that the trial court erred by precluding it from presenting evidence of BBK's contributory negligence is moot, because the Kellys' negligence claims were barred by the statute of limitations, making contributory negligence no longer an issue. CC's Brief at 67. CC next argues that the trial court erred by precluding it from presenting evidence challenging Bell's credibility, including evidence of BBK's other legal matters, such as proof that BBK did not file tax returns between 2007 and 2009 and had let its liquor license lapse while continuing to operate. ***Id.*** at 67-68. Nevertheless, even if the trial court erred in precluding this evidence, the error was harmless, because none of the elements of the surviving breach of contract claim were established exclusively through Bell's testimony. ***See*** TCO, No. 2273 EDA 2018, filed May 8, 2019, at 4, 16 (citing N.T., 2/13/2018, at 138-40) (Mr. Carman corroborated Bell's testimony); N.T., 2/12/2018, at 221 (Attorney Lehman testified that he notified CC, even if Bell's testimony about notifying CC himself were disregarded); N.T., 2/13/2018, at 282-83 (Attorney Kowalski testified that he notified CC, even if Bell's testimony about notifying CC himself were disregarded). Finally, CC maintains that the trial court erred by

precluding it from presenting testimony from SNIC's coverage counsel and retained defense counsel, who would have stated that SNIC was willing to defend BBK and to entertain settlement if the Kellys agreed to set aside the default judgment and to litigate the case on the merits. CC's Brief at 68-69. Nonetheless, CC's brief is unclear – and this Court cannot discern – what CC hoped to establish with this testimony[16] and, thus, whether it was relevant and therefore admissible. *See* Pa.R.E. 402 ("All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible.").

## Conclusion

In conclusion, the trial court did not err nor abuse its discretion when it entered JNOV in favor of Carman as to negligence, denied JNOV as to breach of contract, and ordered a new trial as to damages for the sole remaining claim of breach of contract by CC. *Reott*, 7 A.3d at 835; *ACE*, 939 A.2d at 939. Thus, we affirm the trial court's order of June 26, 2018.

Order affirmed.

---

[16] While the proposed testimony from SNIC's counsel could possibly be about the Kellys' failure to mitigate damages, CC never explicitly makes that argument in its brief, and this Court is "neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter." *Commonwealth v. Brown*, 196 A.3d 130, 185 n.21 (Pa. 2018) (quoting *In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/12/20