J-A19038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BAXTER MCLINDON HAYES, III AND JARROD TYSON HAYES | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| BAXTER MCLINDON HAYES, JR. AND UTILIPATH HOLDINGS, INC. | : : : | No. 1798 EDA 2022 |
| Appellants | : | |

Appeal from the Judgment Entered July 12, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  September Term, 2017, No. 001253

BEFORE:  BOWES, J., STABILE, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:           **FILED OCTOBER 17, 2023**

Baxter McLindon Hayes, Jr. (Hayes Jr.) and Utilipath Holdings, Inc. (collectively, Appellants) appeal from the judgment entered in the Court of Common Pleas of Philadelphia County (trial court) in the amount of $97,536.86 in favor of Hayes Jr.'s sons, Baxter McLindon Hayes, III (McLindon) and Jarrod Tyson Hayes (Jarrod) (collectively, Appellees) following a bench trial in this breach of contract case.  Because we agree with Appellants' contention that Appellees failed to establish the element of damages, we reverse the trial court's verdict and vacate the July 12, 2022 judgment.

_____

* Retired Senior Judge assigned to the Superior Court.

**I.**

**A.**

The relevant facts and procedural history of this case are as follows. In 2003, the Appellees and their father Hayes Jr. formed Utilipath, LLC, a company that offered utility locating services to telecommunication companies such as AT&T and commercial wiring services for offices. In 2013, the three men decided to sell Utilipath to non-party NewSpring Mezzanine Capital II, L.P. (NewSpring) for approximately $13 million dollars.[1] Within months of the sale, NewSpring sued the parties for misrepresentation and related claims in the U.S. District Court for the Eastern District of Pennsylvania and in the Chancery Court of the State of Delaware.

On March 29, 2014, the parties executed an Amended and Restated Joint Defense and Common Interest Agreement (the Agreement) to prepare for the NewSpring litigation. Their stated goal was to work cooperatively to advance their common interests in formulating strategy and to share the costs of developing mutually beneficial materials. At that time, Appellees were

_____

[1] Appellant Utilipath Holdings, Inc. was formed when Utilipath LLC was sold to NewSpring in order to operate independently in the commercial wiring field and this entity was not a component of the sale. The trial court found that Hayes Jr. had a larger ownership stake in Utilipath Holdings than his two sons, but that the actual ownership composition of the entity has no relevance to its decision because the joint defense agreement was entered by the men in their individual capacities and not as officers or agents of Utilipath Holdings. (*See* Trial Court Opinion, 12/13/22, at n.1, 5).

represented by Kutak Rock, LLP and Appellants were represented by Kang Haggerty & Fetbroyt, LLC. The Agreement provided in pertinent part as follows:

> **3. Common Interest Materials**. The Parties and their counsel agree that it is in their individual and mutual best interest in the defense of the Litigation (and any anticipated potential litigation) and prosecution of legal claims they may assert related to the subjects of their common interest, to share information ("Common Interest Materials"). Common Interest Materials include, but is not limited to: (i) communications (in writing and orally) by or among any of the Parties and/or their counsel, (ii) all information and communications with or relating to prospective witnesses, as well as consulting experts, testifying experts or litigation support service providers who may be engaged by the Parties or their counsel to assist in defense of the Litigation, (iii) disclosure of documents, factual and legal analyses, summaries, memoranda, mental impressions, opinions, legal strategies, interview reports and reports of experts, consultants or investigators, and (iv) joint meetings between counsel, the Parties, their representatives, employees and agents and any meetings with prospective witnesses or consulting experts or litigation support service providers in connection with the Litigation or other subjects of Common Interest in person, by telephone or in any other form, including all records, notes or reports of such communications all of which are included within the term "Common Interest Materials."

* * *

> **8. Coordinating Counsel and Shared Expenses**. The Parties and their counsel agree that Kutak Rock, LLP shall serve as coordinating counsel for the Parties in connection with the defense of the Litigation with primary responsibility for (i) the collection and management of shared Common Interest Materials, including all documents which may be subject to discovery in the Litigation pursuant to written protocols (the "Protocols") approved by counsel to the Parties, (ii) **management and administration of all hard costs incurred for the benefit of the Parties in the Litigation, including without limitation, litigation support services, experts and local counsel ("Shared Expenses") all of which the Parties agree shall be shared 2/3 by the**

**Parties which are clients of Kutak Rock, LLP and 1/3 by the Parties that are clients of Kang Haggerty & Fetbroyt, LLC**, and (iii) formulating recommendations as to legal strategies for the defense of the Litigation and assertion of legal rights on behalf of the Parties.

(Agreement, 3/29/14, at 2) (emphasis added).

The parties incurred substantial litigation costs through use of various professional services, including those of Asterion, Inc., a large national forensic accounting firm (Asterion), which developed expert evidence important to the parties' defense against NewSpring. The Asterion costs and other expenses were billed to the parties through their respective law firms, with 2/3 invoiced to Appellees and 1/3 to Appellants in accordance with the Agreement. Kang Haggerty billed Appellants directly for their costs.

Disagreement as to the handling of the litigation arose between the parties based on what Hayes Jr. viewed as Asterion's high costs, his sons' employment of marketing consultants and the legal fees charged by Kang Haggerty. On March 20, 2015, he retained current counsel Clifford E. Haines, Esq., who entered his appearance in the underlying NewSpring litigation. Appellees continued to be represented by Kutak Rock and they reached a settlement with NewSpring in March of 2016 with a payment of approximately $650,000. (**See** N.T. Trial, 7/23/21, at 58). Conversely, Hayes Jr. successfully litigated a trial against NewSpring, with no sum owed.

Eventually Asterion filed two lawsuits, one against McLindon and Jarrod and one against Hayes Jr. only, which were captioned Asterion, Inc. v. Baxter

McLindon Hayes, III and Jarrod Tyson Hayes, No. 1709004 (Pa. C.P., Phila. Co.) and Asterion, Inc. v. Baxter McLindon Hayes, Jr., No. 171003958 (Pa. C.P., Phila. Co.).

**B.**

Appellees filed a complaint against Appellants in October of 2018 alleging failure to pay 1/3 of all litigation costs as required by the Agreement. Appellees maintained they paid for the majority of the work, costs and legal fees associated with the NewSpring litigation, including the taking of numerous depositions and preparation of court filings.

The trial court held a two-day bench trial during which Appellees provided documents and testimony showing that they had paid approximately $261,313 towards the litigation costs concerning the NewSpring litigation. (**See** N.T. Trial, 7/22/21, at 154-165). Regarding the Asterion costs, Jarrod testified that he and his brother disputed the total amount Asterion charged as excessive, and when Asterion sued for unpaid fees, they settled the lawsuit for $80,000, with half of the settlement amount paid by each brother. (**See** N.T. Trial, 7/23/21, at 37-38). However, it was admitted that Asterion did not seek to hold them accountable for any unpaid amounts attributable to Hayes Jr. but were being separately sued by Asterion only for their 2/3 share of

Asterion's unpaid balance, not for Hayes Jr.'s 1/3 share.  (R. 1669a, R. 1670a).[2]

On February 23, 2022, the trial court entered its verdict of $81,395.65 against Hayes Jr. representing the remaining balance of his proportionate share of the forensic accounting work performed by Asterion because he had benefitted from that work, which gave substance to the merits of his defense. It also awarded Appellees $15,591.86 representing hard costs for postage, process service, subpoenas, JT Acceleration's consulting fees, parking, "Abstar CD4 Tife" , Xerox Hosting, data copying of Utilipath's devices, courier services and Eli Levin consulting services that were billed to McLindon because Appellants used the products of these hard costs in its successful defense.[3]

Hayes. Jr. filed post-trial motions on March 7, 2022, which the trial court denied on June 13, 2022.[4]  Judgment was entered on the trial court's verdict

_____

[2] No evidence was offered by Hayes Jr. regarding the status of the Asterion lawsuit against him.

[3] The trial court attached to its opinion two tables separating the Asterion charges (Table 1) from the additional hard costs (Table 2) charged to Hayes Jr., the amounts he paid towards these expenses, and the amounts it found are due by him.  The Tables show that Hayes Jr. stopped making payments towards the end of 2014/beginning of 2015, approximately nine months after the Agreement was executed.  The trial court found that Hayes Jr. paid $14,214.00 towards the Asterion costs, with a balance owed to his sons of $81,395.65 for these charges.  (**See** Trial Ct. Op. at 4-5).

[4] Appellees and the trial court maintain that this appeal should be quashed as untimely because Appellants' post-trial motion was not timely filed.  However, we agree with Appellants that the post-trial motion was timely, as the ten-day
*(Footnote Continued Next Page)*

on July 12, 2022. Appellants timely appealed and the trial court filed an opinion on December 13, 2022. **See** Pa.R.A.P. 1925(a).

## II.

Appellants' core contention is that Appellees failed to establish the damages element of their breach of contract claim because they presented no evidence demonstrating they sustained any loss or harm flowing from any purported breach of the Agreement. Appellants contest the trial court's interpretation of Section 8(ii) of the Agreement governing payment of shared expenses and maintain that, at most, Appellees demonstrated harm to third party vendors of litigation services but not to themselves, and should not be awarded damages. (**See** Appellants' Brief, at 24-42).[5]

---

deadline expired on Saturday, March 5, and weekend dates are omitted from time computation for timeliness purposes. **See** Pa.R.C.P. 227.1(c)(1), 106(b).

[5] When reviewing a judgment entered following a bench trial, we limit our review to:

> a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

**Discover Bank v. Booker**, 259 A.3d 493, 495 (Pa. Super. 2021) (citation omitted).

**A.**

"It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages." ***Kelly v. Carman Corp.***, 229 A.3d 634, 653 (Pa. Super. 2020) (citation omitted). Where one party to a contract breaches it without legal justification, the other party is entitled to recover the damages sustained, provided: "(1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty." ***Helpin v. Trustees of Univ. of Pennsylvania***, 10 A.3d 267, 270 (Pa. 2010) (citation omitted). The purpose of a damage award is to place the non-breaching party "as nearly as possible in the same position it would have occupied had there been no breach." ***Id.*** (citation omitted).[6]

_____

[6] Because our review involves interpretation of the parties' Agreement, we are mindful that "where an agreement contains definitions for the words contained therein, the court will apply those definitions in interpreting the agreement." ***Toth v. Toth***, 2023 WL 4875220, at *11 (Pa. Super. filed Aug. 1, 2023). Additionally, we are guided by the following cannons of contract interpretation:

First, the entire contract should be read as a whole to give effect to its true purpose. Second, a contract must be interpreted to give effect to all of provisions. . . . Third, a word used by the parties in one sense is to be interpreted as employed in the same

*(Footnote Continued Next Page)*

**B.**

In this case, the parties entered the Agreement for the express purpose of coordinating and sharing the litigation costs involved in defending against NewSpring in two forums. Section 8 of the Agreement obligated Appellants to pay 1/3 and Appellees to pay 2/3 of the hard costs accrued in connection with the NewSpring litigation. (***See*** Agreement at 3-4, Section 8(ii)). These hard costs include, "without limitation", litigation support services and expert materials. Similar language is included in Section 3, which defines common interest materials to "include, but is not limited to . . . all information and communications with or relating to prospective witnesses, as well as consulting experts, testifying experts or litigation support service providers who may be engaged by the Parties or their counsel to assist in defense of the Litigation" as well as expert reports. (Agreement, at 2 Section 3(ii)-(iii)).

While this Agreement provides that Appellants are to pay 1/3 and Appellees are to pay 2/3 of the litigation costs, it does not provide that each party shall be liable for the other party's share. In fact, Asterion billed and sued Appellants and Appellees for its services separately based on their

---

sense throughout the writing in the absence of countervailing reasons, such as thwarting the intent of the agreement. And, finally, a party's performance under the terms of a contract is evidence of the meaning of those terms.

***Id.*** (citation omitted).

proportionate share. Moreover, Asterion's action against Appellees was settled for the remaining amount based on their 2/3 share. It did not purport to settle Asterion's claim against Appellants for their remaining 1/3 share.

Furthermore, while the trial court found that Appellants benefitted from the expert reports produced by Asterion and other expenses incurred in defending against the NewSpring litigation, just because Appellants received some benefit from Asterion's work does not mean that Hayes Jr. is obligated to pay Appellees for costs that they incurred. That is a quantum meruit claim which was not pled.[7] Even if it had been, a quantum meruit claim cannot be used to vary or supplement the terms of an agreement to make the parties responsible for payments made by the other party for which separately they are responsible to pay. ***See Ruby v. Abington Mem'l Hosp.***, 50 A.3d 128 (Pa. Super. 2012).

_____

[7] A claim for damages in quantum meruit is fundamentally an equitable claim of unjust enrichment in which the party seeking recovery must demonstrate:

> (1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

***Shafer Elec. & Const. v. Mantia***, 96 A.3d 989, 993 (Pa. 2014) (citations omitted).

Similarly, the $15,591.86 the trial court also awarded to Appellees due to Appellants' failure to pay expenses invoiced by Kang Haggerty were also billed separately to Appellants, making them liable for those costs. Moreover, Appellees did not claim that they were individually responsible for those bills or that they made payments to Kang Haggerty for any of those litigation costs. Moreover, to the extent that third party litigation vendors were harmed, those entities are neither parties to the Agreement nor to this litigation. Therefore, any purported harm flowing to them can have no bearing on our disposition, which involves only an analysis of damages or lack thereof to Appellees.

Accordingly, because Appellees have failed to establish that they have sustained any such damages from any breach of the Agreement, we reverse the trial court's verdict and vacate the July 12, 2022 judgment against Appellants.[8]

Verdict reversed. Judgment vacated. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/17/2023

---

[8] As resolution of this issue is dispositive, we need not address Appellants' remaining claims on appeal.