J-S38032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DOROTHY BIELA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARNEY PLUMBING, HEATING AND | : | |
| COOLING, INC. AND MOYER AND | : | |
| SON, INC. D/B/A MOYER INDOOR | : | No. 727 EDA 2023 |
| OUTDOOR | : | |
| | : | |
| | : | |
| APPEAL OF: CARNEY PLUMBING, | : | |
| HEATING AND COOLING, INC. | : | |

Appeal from the Judgment Entered April 27, 2023
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2019-08021

BEFORE:  LAZARUS, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED NOVEMBER 1, 2023**

Carney Plumbing, Heating and Cooling, Inc. (Carney) appeals from the judgment entered in the Court of Common Pleas of Bucks County (trial court) after the jury found in favor of Dorothy Biela (Biela) and awarded her $255,000 in damages in her breach of contract/negligence action against Carney.  Carney argues that Biela's action was precluded by the Statute of

_____

[*] Retired Senior Judge assigned to the Superior Court.

Repose,[1] that the court erred in precluding Carney from cross-examining Biela's expert about the settled party, Moyer and Son, Inc. D/B/A Moyer Indoor Outdoor (Moyer), the court erred in failing to include Moyer on the verdict slip, and that the damage amount should be reduced to the actual damages sustained. After our careful review, we affirm.

**I.**

On August 25, 2004, Biela hired Carney to install an outdoor above-ground oil tank to replace an old one in her basement at the suggestion of Carney's employee, Robert Obermeier. Biela signed a maintenance agreement with Carney to perform yearly maintenance services through 2019

_____

[1] **See** 42 Pa.C.S. § 5536. Section 5536 "eliminates a plaintiff's cause of action 12 years after completion of the construction of an improvement to real property, regardless of when plaintiff's injury occurs. …" **Vargo v. Koppers**, 715 A.2d 423, 425 (Pa. 1998) (internal citation, internal quotation marks and brackets omitted).

**(a) General rule.**—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

> (1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.
>
> (2) Injury to property, real or personal, arising out of any such deficiency.

42 Pa.C.S. § 5536(a)(1), (2).

- 2 -

on her heating system, which included inspection of the outdoor oil tank and making recommendations of items that needed replacement.

On January 24, 2019, after Moyer had filled the 275-gallon oil tank with approximately 190.4 gallons of oil, the outdoor oil tank burst, causing oil to leak and damage Biela's property. On November 19, 2019, Biela filed the complaint against Carney and Moyer. The complaint alleged negligence against Carney for failure to install the outdoor oil tank properly and breach of contract for Carney's failure to inspect, evaluate and remedy any issue with Biela's heating system. The complaint alleged negligence against Moyer for failure or refusal to inspect the oil tank and/or alert Biela as to its condition.

After the pleadings were closed, Carney filed a motion for judgment on the pleadings as well as a motion for summary judgment arguing that Biela's claims were barred by the Statute of Repose because the oil tank was installed in 2004, 15 years before Biela filed her complaint. The trial court denied both motions.

Before trial, Biela and Moyer reached a settlement in which Moyer agreed to pay Biela $75,000 in exchange for Biela executing a joint tortfeasor *pro rata* release.

At trial, Carney filed a motion in support of the Statute of Repose again contending that the outdoor above-ground oil tank was a fixture. The court denied the motion finding that based on the evidence presented, the above-

ground oil tank was not a "fixture" because it merely sat on top of cement lintels.

Biela presented her expert forensic mechanical engineer, Colin J. Seybold, P.E., *via* videotape of his trial deposition. Prior to the video's presentation, Biela discussed her objection to portions of Carney's cross-examination of Seybold regarding Moyer's actions or inactions. Biela's attorney told the court that at a pre-trial conference, Carney's counsel had "agreed that they would not be pointing the finger at Defendant Moyer," a representation that Biela's counsel relied on in preparation for trial and, therefore, allowing the line of questions regarding Moyer's alleged negligence would cause unfair surprise. (N.T. Trial, 8/30/22, at 5). Biela's counsel argued that Carney elected not to retain their own expert to testify against Moyer as a potential other cause of the damages and Carney could not force Biela's expert to testify on Carney's behalf. (**See id.** at 5-6). Finally, counsel explained that the cross-examination about Seybold's opinion regarding Moyer was outside the scope of direct since Seybold had not testified about Moyer. (**See id.** at 5).

Carney's counsel agreed that he stated he would not present evidence against Moyer. (**See id.** at 8). However, he argued that Seybold's reports contained his opinion that Moyer's negligence in failing to inspect the oil tank

at the time of filling it could have also caused the damages.[2] Because he was going to testify as to the cause of the incident, he was not going to question Seybold about his opinion about Moyer's possible negligence, but impeach Seybold and prevent the false impression that he believed that Carney was solely responsible, when his reports reflected that he had multiple theories, "which could have exonerated his client." (*Id.* at 9); (*see id.* at 11-14).

The court sustained Biela's objection and struck the line of questioning from Seybold's video deposition. As it explains in its opinion:

> … [I]n her cross examination, counsel for Carney was attempting to force Biela's expert to testify on Moyer's alleged negligence on Carney's behalf because Carney did not procure their own expert opinion regarding Moyer. There was no testimony from Mr. Seybold on direct that Moyer did anything wrong. If Carney wanted to present expert testimony on Moyer's negligence, they were free to retain their own expert witness.
>
> Carney argued that "[c]ross examination is ... permissible to prove the substantive liability of Moyer and does not violate the rule that one party may not compel an expert for the opposing party to offer an opinion against his will." However, counsel for Carney agreed not to attempt to prove the substantive liability of Moyer so therefore, it is not permissible. The court sustained

---

[2] Specifically, in his October 27, 2021 report, Seybold concluded "within a reasonable degree of engineering certainty that the services provided by Carney and by Moyer … were a cause of the oil leak …." (Seybold Expert Report, 10/27/21, at 10). The report stated that Carney was negligent for failing to inspect the new tank and that it improperly installed it in the first place. (*See id.* at 10-11). Seybold opined that Moyer failed to inspect the tank before filling it, and that it was unreasonable for Moyer "to believe that it was safe to add almost 1,400 pounds of heating oil … given the amount of corrosion observed on the exterior of the subject tank." (*Id.* at 11); (*see also* Seybold Expert Report, 1/03/[22], at 2-3) (disagreeing with Carney and Moyer's expert reports that they were not negligent).

> Biela's objection that any testimony regarding Moyer's alleged negligence was irrelevant based on the parties' agreement that Carney would not be presenting evidence against Moyer.

(Trial Court Opinion, 6/30/23, at 6-7) (some capitalization omitted).

After Biela completed her case, Carney made a motion for directed verdict, again on the basis of the Statute of Repose, which the trial court denied. The trial court also entered a directed verdict in Moyer's favor because no evidence had been entered on the record against it, and because Moyer was no longer a party, it was not included on the verdict sheet.

The jury returned a verdict in favor of Biela and against Carney in the amount of $255,000, finding that Carney was both negligent and had breached the service agreement, resulting in Biela's injuries. (*See* Verdict Slip, 8/30/22, at 1-2). Carney moved to have the verdict molded, arguing that it improperly awarded damages in excess of those actually sustained and should be molded to reflect the $75,000 settlement received from Moyer. The court denied the motion, observing that Moyer is a joint tortfeasor who was not a part of the verdict, so the verdict amount could not be molded to include it. (*See* N.T. Trial, 8/31/22, at 110-11).

Carney filed a post-trial motion that included a judgment notwithstanding the verdict (j.n.o.v.) or alternatively, a motion for a new trial. Carney argued it was entitled to j.n.o.v. on the bases that (1) Biela's claims were barred by the Statute of Repose because the oil tank was not moveable and, therefore, was an improvement to realty, and (2) the verdict awarded

damages beyond those actually sustained due to the $75,000 received as part of the settlement with Moyer. (**See** Carney's Motion for J.N.O.V., 9/08/22, at ¶¶ 1-2). Alternatively, Carney argued, in pertinent part, that it was entitled to a new trial because the court abused its discretion by (1) precluding its cross-examination of Biela's expert witness Seybold, and (2) by not including Moyer on the verdict sheet. (**See** Carney's Motion for a New Trial, 9/08/22, at ¶¶ 1-2). The trial court denied the motions. Carney timely appealed and filed a court-ordered statement of errors complained of on appeal.[3] **See** Pa.R.A.P. 1925(b).

Carney raises four claims for our review: (1) Whether j.n.o.v. by directed verdict should be entered where Biela's claims are barred by the Statute of Repose; (2) Whether j.n.o.v. or a new trial is warranted where relevant evidence by Biela's liability expert was precluded; (3) Whether j.n.o.v. or a new trial is warranted where Moyer should have been included on the verdict slip; and (4) Whether the verdict should be reduced by $75,000 to reflect damages actually incurred. (**See** Carney's Brief, at 10).

---

[3] On April 25, 2023, this Court issued an order on Carney for it to *praecipe* the trial court prothonotary to enter judgment on the court's decision. On May 2, 2023, Carney provided this Court with a copy of the trial court's docket that reflected judgment was entered by *praecipe* on April 27, 2023. Therefore, we treat the notice of appeal as filed after the entry of judgment. **See** Pa.R.A.P. 905(a)(5).

## II.

## A.

Carney argues that the trial court erred in denying its motion for j.n.o.v. or directed verdict because Biela's claims were barred by the Statute of Repose where the oil tank is a fixture that was installed in 2004, which was more than 12 years before the 2019 damage.[4] It claims that the trial court erred in denying its motions based on its finding that the tank was not a fixture where there was no evidence that it was movable or that moving it would not cause substantial property damage.[5]

_____

[4] Our standards of review of the grant or denial of motions for directed verdict and j.n.o.v. are identical. ***See Kelly v. Carman Corporation***, 229 A.3d 634, 647 (Pa. Super. 2020). ***See id.*** We will only reverse a court's ruling on such a motion where we find that it abused its discretion or committed an error of law. ***See id.*** Our standard of review is the same as the trial court's:

> There are two bases upon which a [JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

***Id.*** (citation omitted).

[5] Biela argues, without citation to authority, that this issue is moot because the Statute of Repose does not apply to breach of contract actions. Therefore, argues Biela that since the jury found Carney liable for negligence AND breaching the service agreement, even if the Statute of Repose barred the

*(Footnote Continued Next Page)*

- 8 -

"Statutes of repose differ from statutes of limitation in that statutes of repose potentially bar a plaintiff's suit before the cause of action arises, whereas statutes of limitation limit the time in which a plaintiff may bring suit after the cause of action accrues." *Varo v. Koppers Co., Inc. Engineering and Const. Div.*, 715 A.2d 423, 425 (Pa. 1998) (citation omitted). "Because it eliminates a plaintiff's cause of action '12 years after completion of construction of [an improvement to real property],' regardless of when the plaintiff's injury occurs, both Pennsylvania and federal courts have consistently held that 42 Pa.C.S. § 5536 is a statute of repose." *Id.* (citation omitted).

The party moving for protection under the Statute of Repose has the burden to prove that "(1) what is supplied is an improvement to real property; (2) more than twelve years have elapsed between the completion of the improvements to the real estate and the injury; and (3) the activity of the moving party must be within the class which is protected by the statute." *Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 84 (Pa. 1994); *see also*

---

negligence action, the breach of contract action would survive and Carney still would be liable for the $255,000 in damages. (*See* Biela's Brief, at 7 n.1); (Verdict Slip, 8/31/22, at 1-2). In effect, what she is arguing is that the negligent inspection of the tank was not covered by the Statute of Repose because it did not involve real estate. Because the argument is not fully developed and because of the way we have resolved this issue, we need not address this contention.

42 Pa.C.S. § 5532. "An improvement includes everything that **permanently** enhances the value of real property[]" and has been defined as:

> [A] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes ...

*Noll by Noll*, 543 A.2d at 87 (citations omitted; emphasis added). What becomes problematic for purposes of Section 5536 is where chattel or personality is attached to real property. *See id.* "[A] court must make an objective determination of whether an object is a fixture for the purposes of § 5536." *Id.* at 88; *see Smith v. Weaver*, 665 A.2d 1215, 1218 (Pa. Super. 1995) ("A fixture is an article … of personal property which has been so annexed to the realty that it is regarded as part and parcel of the land.").

In making the objective determination of whether an object is a fixture, the court may consider:

> The degree to which and manner in which the object is attached to real property, the ease of removing the object, whether the object may be removed without damaging the real property, how long the object has been attached to the real property, whether the object is necessary or essential to the real property, and the conduct of the party and whether it evidences an intent to permanently attach the object to the [realty].

*Noll by Noll*, 543 A.2d at 88 (internal citations omitted). The court need not consider the parties' actual state of mind, rather it is their "objective intent … to permanently incorporate a chattel into real property as evidenced by the

proven facts and surrounding circumstances entered into evidence." *Id.* (citations omitted).

In this case, the trial court found that the oil tank was not a fixture and, therefore, not an improvement to real property since it is "not affixed, attached, not even fastened by bolts to the real property" and instead merely sat on top of cement slabs. It replaced an indoor tank, which "is evidence of conduct by both parties that there was never an intent to permanently attach anything to the realty" and that they understood that oil tanks are not permanent because they require replacement. "In fact, the parties agreeing to move the oil tank outside the home evidences an intent to ensure the oil tank had a less permanent effect." (Trial Ct. Op., at 12-13). Upon our independent review of the record, we agree.[6]

Biela testified that she had her indoor basement oil tank replaced at Carney's suggestion because it was in poor condition. (*See* N.T. Trial, 8/29/22, at 69); (*see also* N.T. Trial, 8/30/22, at 125-26). Carney employee Obermeier testified that the outdoor oil tank sat on leveled concrete slabs. (*See* N.T. Trial, 8/30/22, at 90-91). It was not affixed to the slabs, let alone

---

[6] We note that Carney complains that Biela failed to prove that the oil tank was not a fixture because she did not provide evidence that the oil tank was capable of being removed without damaging the property. However, we remind Carney that it had the burden to prove that the removal of the tank **would** cause damage, which they failed to do. Moreover, as explained above, the record reflects that Biela did provide evidence that the tank was not a permanent fixture.

- 11 -

the home. Instead, the tank had a hole to which Carney employee Obermeier attached a drain port and two pipes that would pull the oil out of the tank to get the oil into the house. (*See id.* at 98-99). Removal of the tank, therefore, would merely require it to be unattached to the pipes and there was no evidence that this would cause any damage to the realty.

Thus, the record supports the finding that the manner of attachment was such that the oil tank was not a permanent improvement. It was easily removable by detaching the pipes. The conduct of the parties reveals that they did not intend for the tank to be a permanent fixture to the property, as the outdoor tank replaced an indoor tank that was in poor condition, resulting in an inference that the new tank was not permanent, but would have to be replaced in the future, which could be more easily accomplished with its outdoor placement.

Based on the foregoing, the trial court did not abuse its discretion in denying Carney's request for j.n.o.v. or directed verdict on the basis of the Statute of Repose.[7] *See Kelly*, 229 A.3d at 647. Carney's first issue does not merit relief.

---

[7] Moreover, we are not persuaded by Carney's reliance on *Radvan v. General Electric Co.*, 576 A.2d 396 (Pa. Super. 1990), because it is factually distinguishable. In *Radvan*, this Court affirmed a trial court's finding that the Statute of Repose applied to an indoor weld and side trim machine because it "had been in place for more than thirty years; had never been moved since its installation; was **bolted to the floor** and was connected to conduit piping for power; and because **its weight was in dozens of tons and it would**
*(Footnote Continued Next Page)*

**B.**

Carney argues that the trial court abused its discretion in sustaining Biela's objections to a line of cross-examination of her engineering expert, Seybold, about Moyer's alleged negligence as a possible cause of her damages.[8] (**See** Carney's Brief, at 22). It claims that Seybold authored expert reports in advance of trial in which he set forth his conclusions and opinions, including that Moyer was "causal[ly] negligent" for the damages caused by the oil tank. (**Id.**). As a result, Carney contends that its counsel should have been permitted to impeach Seybold to show he had several opinions he had not presented to the jury, which was not substantive evidence against Moyer. (**See id.** at 26).[9]

The Pennsylvania Rules of Evidence provide that "[t]he credibility of a witness may be impeached by any evidence relevant to that issue, except as

---

**have been very difficult to dismantle**." **Radvan**, 576 A.2d at 397 (emphases added). This is inapposite to the situation here because the outdoor oil tank was not affixed to the cement slabs on which it sat and there was no evidence that dismantling it would have been very difficult.

[8] "The scope of cross-examination is within the sound discretion of the trial court, and we reverse only for an abuse of discretion." **Kimball v. Laser Spine Institute, LLC**, 264 A.3d 782, 797 (Pa. Super. 2021), *appeal denied*, 274 A.3d 722 (Pa. 2022) (citation omitted). "In exercising this discretion, the trial court may limit cross-examination due to concerns that the matter is collateral, would likely confuse or mislead the jury, or would waste time." **Id.** (citations omitted).

[9] The certified record does not contain a transcript of Seybold's video deposition, and our effort to obtain one was unsuccessful.

- 13 -

otherwise provided by statute or these rules." Pa.R.E. 607(b). "Generally, [e]very circumstance relating to the direct testimony of an adverse witness or relating to anything within his or her knowledge is a proper subject for cross-examination, including any matter which might qualify or diminish the impact of direct examination." *Jacobs v. Chatwani*, 922 A.2d 950, 965 (Pa. Super. 2006), *appeal denied*, 938 A.2d 1053 (Pa. 2007) (citation omitted).

In this case, the trial court asked what questions Carney's counsel asked during Seybold's deposition so it could decide Biela's objections:

THE COURT: The question says?

MS. HORNEFF: "One of the things you have—you have given an opinion that one of the other things that caused this loss was in the oil delivery by Moyer." And that's where the objection is.

THE COURT: And, therefore, you are presenting evidence of opinions about Moyer's conduct; correct?

MS. HORNEFF: I am presenting evidence that this expert has given contrary—

THE COURT: You are presenting evidence against Moyer; correct?

MS. HORNEFF: No, Your Honor, I don't believe I am.

THE COURT: So if he answers, what do you expect the answer is going to be?

MS. HORNEFF: What did he answer?

THE COURT: You have given me opinion.

MS. HORNEFF: He never answers the question.

THE COURT: Well, then .. that doesn't answer the question. …

\*   \*   \*

MS. HORNEFF: The next question, Your Honor, is … "So in addition to giving an opinion as to Carney, you also said Moyer failed to inspect the tank when it filled the tank the day before the leak?"

And he says, "Objection. Objection. Objection." The witness says, "Yes, I do."

"How often was Moyer at the home?"

"I don't recall."

"And do you know for how long they had been supplying oil?"

"I believe it had been a long time."

"So they had been to the tank multiple times before the day this happened?"

"Multiple occasions, for many years, correct." ….

＊　　＊　　＊

THE COURT: … He's still not answering the question of does he have an opinion. He has an opinion, but he never said what the opinion is.

MS. HORNEFF: Respectfully, Your Honor, he says—I asked him has he expressed an opinion as to Moyer and Carney, and he says, "Yes, I do."

THE COURT: Yes. Do you know what it is?

MS. HORNEFF: I don't care what it is.

THE COURT: Oh, yes, you do care what it is … because you have an agreement with the parties that he's not going to present evidence. And he would be speculative, which is what you are doing. The jury can decide: "Gee, I guess that answer is yes" or "Gee, I guess that answer is no."

MS. HORNEFF: Your Honor, this man has an opinion that is contrary to the opinion he has given to the jury on the stand.

THE COURT: But he's not going to testify about it because you've made an agreement. And, also, what is the relevancy that he has an opinion? None. You have removed that. You made your agreement that he's going to present no evidence. And in addition to that, you don't know what his opinion is. This jury is not going to know what his opinion is. They're going to be asked to speculate as to what that opinion is.

MS. HORNEFF: His opinion is that Moyer failed to inspect—

THE COURT: Where does it say that in the colloquy you just showed me, in the questions and answers you just showed me?

MS. HORNEFF: Well, it's in the question. You gave an opinion—

THE COURT: No, do you have an opinion. "In addition to giving an opinion as to Carney, you also said that Moyer failed to inspect the tank when it filled the tank the day before the leak?" And his answer to that is, yes, they failed. Okay?

MS. HORNEFF: Okay.

THE COURT: Okay.

MS. HORNEFF: I don't need—

THE COURT: That is contrary to your agreement; is that correct? That is against Moyer; right?

MS. HORNEFF: I disagree, Your Honor. I think it's impeachment of the expert. The expert—

THE COURT: Impeachment for what? He hasn't said anything inconsistent. … This will be stricken.

(N.T. Trial, 8/30/22, at 11-17).

Based on our independent review of the record, we discern no abuse of discretion by the trial court. It is undisputed that Carney voluntarily agreed at a pre-trial conference that it would not present any evidence at trial about Moyer's negligence, a stipulation on which Biela's counsel relied. (***See*** N.T.

Trial, 8/30/22, at 8). Although, generally, a court has the discretion to permit a party to cross-examine an expert about opinions in his report that conflict with his trial testimony, the trial court precluded Carney from pursuing this line of questioning on the basis that it agreed not to do so. Carney's claim that it only wanted to impeach Seybold's testimony, not enter substantive evidence about Moyer's negligence, is belied by its argument that, had it been allowed to impeach Seybold, the jury could have concluded, in pertinent part, "that Moyer had some share of liability." (Carney's Brief, at 26).[10]

Accordingly, in light of Carney's pre-trial agreement not to introduce any evidence of Moyer's negligence, we discern no abuse of discretion in the trial court's preclusion of Carney's cross-examination of Seybold about whether Moyer failed to inspect the oil tank when delivering oil to Biela. **See Kimball**, 264 A.3d at 797. This issue merits no relief.

---

[10] Carney relies on two court of common pleas decisions to support his argument that "a non-settling defendant may cross-examine the plaintiff's expert on his report that established the settling defendant's liability … to impeach the expert and prevent the false impression that the plaintiff's expert believes that the non-settling defendant alone was responsible for the [damages] … [and] to prove the substantive liability of the settling defendant." (Carney's Brief, at 22-23) (citing **Stang v. Smith**, 2014 WL 11300415 (C.C.P. Carbon Cty. 2014) and **Crew v. Penn Presbyterian Med. Ctr.**, 2017 WL 3077927 (C.C.P. Phila. Cty. 2017)). However, the cases are distinguishable because the non-settling defendants did not voluntarily stipulate that they would not present any evidence regarding the liability of the settling defendants.

## C.

Carney next argues that the trial court erred or abused its discretion in not including Moyer on the verdict slip for the purpose of apportioning liability. (**See** Carney's Brief, at 26-27).[11]

There is no absolute right to inclusion of a settling defendant on a verdict sheet. "[T]he relevant inquiry [is] whether the evidence adduced [is] sufficient to warrant the jury apportioning any liability to the settling defendants." **Hyrcza**, 978 A.2d at 968 (emphasis omitted).

> [A] trial court must determine whether any evidence of a settling co-defendant's liability exists before deciding whether to put that co-defendant on a jury verdict slip. If the evidence is insufficient to support a *prima facie* case against a settling codefendant, … such co-defendant may be left off the jury verdict slip.

*Id.* at 969.

In this case, the record is devoid of any evidence against Moyer because Carney agreed not to introduce any, and the trial court properly exercised its discretion in precluding Carney from doing so through Biela's expert and in entering a directed verdict in favor of Moyer. Therefore, we discern no abuse

---

[11] "A trial court's refusal to include a settling co-defendant on a verdict slip is reviewed for an abuse of discretion or an error of law." **Hyrcza v. West Penn Allegheny Health System, Inc.**, 978 A.2d 961, 968 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted). "An abuse of discretion occurs when the course pursued by the trial court represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." *Id.* (citation and internal quotation marks omitted).

of discretion in the trial court's refusal to include Moyer on the verdict slip. *Hyrcza*, 978 A.2d at 968.

## D.

Carney argues that the trial court erred in denying its request to mold the verdict to reflect Moyer's settlement amount of $75,000, resulting in a damages award that exceeded the amount Biela actually incurred, which is fixed because it was only related to property damage. To allow her to recover the whole damage amount of $255,000 based on the jury verdict is barred by the concept of a single injury.[12]

"[A] non-settling tort-feasor remains liable for his full proportionate [*i.e.* pro-rata] share of the damage award regardless of the amount paid by [a] settling defendant[.]" *Walton v. Avco Corp.*, 610 A.2d 454, 460 (Pa. Super. 1992) (citation, brackets and internal quotation marks omitted).

> The inducements for a defendant to settle are the certainty of the agreed-upon obligation and the avoidance of the vagaries of trial. The finality of the settlement agreement is crucial. …
>
> The actual amount of the release, if it exceeds [the settling party's proportionate share], is of no consequence in the satisfaction of the judgment of the remaining defendants. The fact that the plaintiff may receive a larger dollar amount in damages than that fixed by the jury does not militate against such an approach. …

*Charles v. Giant Eagle Markets*, 522 A.2d 1, 2-3 (Pa. 1987).

---

[12] We review the trial court's denial of Carney's motion to mold the verdict for an abuse of discretion. *See Herbert v. Parkview Hosp.*, 854 A.2d 1285, 1288 (Pa. Super. 2004), *appeal denied*, 872 A.2d 173 (Pa. 2005).

Not deducting the settlement amount from the judgment against the [non-settling tortfeasor] promotes the [Uniform Contribution Among Tortfeasors] Act's goal of encouraging settlements. If the plaintiff knew that any settlement reached would be deducted from the proportionate share owed to the plaintiff by another tortfeasor, the plaintiff would be less likely to settle. Similarly, tortfeasors might refuse to settle, hoping that their just share of damages would be reduced by the settlement amount paid by another tortfeasor.

*Id.* at 3 (citation omitted).

In this case, Carney voluntarily agreed not to "point the finger" at Moyer by introducing evidence of its liability and, in fact, did not do so. Therefore, the jury found Carney 100 percent liable for the total damage amount. Had Carney not agreed not to present any evidence against Moyer and, instead, presented evidence against it so the jury could determine what, if any, percentage of liability was attributed to Moyer, Carney's proportionate share of the damages might have been less than $255,000.[13]

Accordingly, because the jury found that Carney was 100 percent liable for the damage suffered by Biela, the trial court did not err in declining to mold the verdict in consideration of the settlement amount paid by Moyer. *See Herbert*, 584 A.2d at 1288. Carney's final issue lacks merit.

---

[13] However, even had the jury made a finding as to the relative liability of each defendant, the amount for which Carney would have been liable would have been its proportionate share of the $255,000, regardless of the $75,000 Moyer settlement. *See Charles*, 522 A.2d at 2 (concluding non-settling tortfeasor is required to pay his full *pro-rata* share, even if settling tortfeasor's settlement payment results in plaintiff recovering more than total damage amount).

Judgment affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/01/2023