J-A22027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GREENE COUNTRIE VILLAGE OWNER'S ASSOCIATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VILLAGE OF EARLE'S LAKE CONDOMINIUM ASSOCIATION, HARVEY HENSLEY, NADINE HENSLEY, KYLE R. WILSON, AND ASHLEY L. WILSON, GREEN COUNTRIE VILLAGE OWNERS ASSOCIATION | : | No. 2903 EDA 2024 |
| | : | |
| APPEAL OF: HARVEY HENSLEY, NADINE HENSLEY, KYLE R. WILSON, AND ASHLEY L. WILSON | : | |

Appeal from the Judgment October 24, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2019-003716

BEFORE: LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.: **FILED NOVEMBER 20, 2025**

Harvey Hensley, Nadine Hensley, Kyle R. Wilson, and Ashley L. Wilson (collectively, "Appellants") appeal from the judgment entered on Greene Countrie Village Owner's Association's ("Greene Countrie") claim of unjust enrichment, and on Appellants' counterclaim of negligence. We affirm.

"This case involves a dispute over the maintenance and responsibility over a dam located on and adjacent to the properties of both" Greene Countrie

_____

[*] Former Justice specially assigned to the Superior Court.

and Appellants. Trial Court Opinion, 1/16/25, at 1. By way of background, we note: "Earles Lake and dam were built in 1910 by former governor George H. Earle." *Id*. at 2. This property was later subdivided. Ultimately, Greene Countrie and Village of Earle's Lakes Condominium Association ("Village of Earle's Lake"), both condominium associations, each came to own part of this land. Appellants Harvey and Nadine Hensley own a nearby home, and Kyle and Ashley Wilson own another nearby home. Appellants describe their properties as formerly having "spectacular views of the lake" and averred "they paid a premium on their properties because of the lake." Appellants' Brief at 4; *see also* Trial Court Opinion, 1/16/25, at 6.

The trial court summarized the trial evidence as follows:[1] in September 2011, following Hurricane Irene, the Pennsylvania Department of Environmental Protection (the "DEP") "notified Greene Countrie that the dam was unsafe and needed to be removed." *Id*. at 2. In response, Greene Countrie hired an engineering firm and opted to rehabilitate the dam, with an estimated cost of $845,000. The engineering firm performed inspections, conducted routine maintenance, and reported to the DEP.

---

[1] For ease of discussion, we have amended the trial court opinion's references to "the Association" to "Greene Countrie," and removed the honorific "Mr." from references to the expert witness, Ritchey. In addition, we have omitted the opinion's citations to the transcripts and trial record.

- 2 -

In 2017, Greene Countrie hired a new engineer, Eric Ditchey[2] ("Ditchey"), to compare rehabilitation and removal of the dam. Ditchey later testified at trial as an expert in the field of dam engineering, safety, and maintenance.

> Ditchey inspected the dam and explained that it was classified as a "C-1" dam by the DEP, which meant that it was small, but had a "high hazard potential[" and "]that if the dam were to fail, there [was] a potential for loss of life downstream and significant property damage."
>
> Ditchey explained that . . . the two logical approaches in this case were to rehab or remove [the dam], with removal being the cheaper option . . . . In his estimation, it would cost $711,785.74 to fully remove and drain the lake.

Trial Court Opinion, 1/16/25, at 2-3. Greene Countrie then attempted to raise funds to rehabilitate the dam, "including unsuccessfully applying for grants to preserve the dam, and endeavoring to sell the area . . . for residential development." *Id*. at 3.

Meanwhile, Ditchey prepared "a proposal for [the] DEP for the scope of work needed to fix the dam[.] In 2019 Ditchey obtained a property survey[,] which was required as part of [the DEP] proposal. That survey revealed that . . . Appellants were also dam owners." *Id*. The trial court noted that the Dam Safety and Encroachments Act[3] provides that the owner of any dam "shall have the legal duty to . . . monitor, operate and maintain the facility in

_____

[2] In the trial transcript, this witness' last name is spelled "Dietschi."

[3] *See* 32 P.S. §§ 693.1-693.27.

a safe condition." 32 P.S. § 693.13(a)(1). Additionally, Ditchey testified at trial "that in his experience[,] every person that owns a portion of the dam that would fall on their property has been considered a dam owner[ and] is responsible for the operation, inspection, and maintenance of the dam." *Id*. at 2-3.

In April 2019, Greene Countrie commenced the underlying action.[4] It subsequently filed an amended complaint, which raised, *inter alia*, a claim of unjust enrichment against Appellants. Greene Countrie averred

> that it had conferred a benefit on Appellants by paying past and ongoing maintenance costs associated with the upkeep, repair and removal of the dam and sought reimbursement.
>
> [In July 2020,] Appellants filed an answer and counterclaim[ in negligence, which] alleged that they suffered monetary damages as a result of Greene Countries' alleged failure to properly maintain the lake and dam[.]

*Id*. at 1-2 (paragraph break added).

We note that both the trial court opinion and Appellants' brief extensively discuss post-complaint events, including: (1) the DEP's January 2020 issuance of a violation notice, to both Greene Countrie and Appellants, as to the condition of the dam; (2) Greene Countrie and Ditchey's submission of plans to the DEP, and the DEP's August 2020 consent order to perform a

---

[4] Greene Countrie initially sued only Village of Earle's Lake, seeking their participation in the removal of the dam. Ultimately, these parties settled prior to trial.

partial breach of the dam; (3) Greene Countrie's advice to Appellants to "reinforce the stream channel on their properties," where Appellants had not given Greene Countrie permission to perform any work on their property; (4) the November 2020 completion of the breach of the dam; (4) the DEP's February 2021 finding "that the consent order requirements had been fulfilled;" (5) subsequent notice three years later, in September 2023, from the DEP of new "erosion occurring at the outflow of the dam," with a request for Greene Countrie's engineer to meet with the DEP; and (6) the continued lack, in 2023, of any "defined agreement among the owners related to the responsibility for maintenance of the dam." Trial Court Opinion, 1/16/25, at 4-5; *see also* Appellants' Brief at 19-25.

This matter proceeded to a three-day non-jury trial in May 2024, on Greene Countrie's claim for unjust enrichment and Appellants' counterclaim for negligence. Greene Countrie presented the evidence summarized above. The trial court summarized Appellants' evidence and argument as follows:

> At the time that Appellants purchased their property they were aware of the age of the dam and its condition. According to Appellants, they paid a premium on their properties because of the lake. . . . Appellants were . . . aware that the property they purchased was on a floodplain. [Appellants were also aware of the possibility that the lake may have to be drained as far back as 2011.]
>
> Appellants testified that they had no responsibility in the maintenance and upkeep of the dam and were not involved with any decision making regarding the dam or its ultimate breach. . . . They acknowledged that Greene Countrie was ordered to breach the dam by DEP. Other than notifying the township and DEP regarding the erosion, the only undertaking by Appellants to

date in relation to the property is tree removal. Appellants maintain that their properties have suffered a significant loss in value following the breach of the dam. They consider Greene Countrie to be responsible for this loss.

Trial Court Opinion, 1/16/25, at 5-6 (paragraph break added).

Following the close of evidence, the trial court directed the parties to file proposed findings of fact and conclusions of law. On September 19, 2023, approximately four months after trial, the trial court issued a one-page decision, finding neither party sufficiently established their claims.[5]

Appellants filed separate timely post-trial motions, which stated "[t]he Hensleys were the owners of a portion of the dam wall,"[6] but averred "[t]he Wilsons were the owners of a small concrete wall on the edge of Earl[e]'s Lake alleged to be part of the dam." Post Trial Motions for Relief by Harvey and Nadine Hensley, 9/19/24, at ¶ 3; *see also* Post Trial Motions for Relief by Kyle and Ashley Wilson, 9/19/24, at ¶ 3. The trial court denied both motions and subsequently entered judgment. Appellants then filed a timely joint notice of

_____

[5] Although the body of the decision states a date of September 13, 2024, its trial docket entry date is September 19, 2024.

[6] The filed copy of Appellants Hensley's post-trial motion, in the certified record is incomplete. Its numbered paragraph #45 ends mid-sentence, and the next page is the certificate of service.

appeal.[7]  The court did not order a Pa.R.A.P. 1925(b) statement of issues complained of on appeal, but issued an opinion.

Appellants present three issues for our review:

A. Did the [trial] court err in its application of the elements of negligence to the facts by failing to consider the uncontradicted evidence of each element?

B. Did the court err in precluding Ashley Wilson, an active real estate developer, familiar with the permitting process, from testifying about the cost to obtain permits to restore her property to usable condition?

C. In the case of the Hensleys, did the court err in failing to find a breach of the common enemy rule where the uncontroverted evidence was that Green Countrie . . . diverted the course of the stream onto a new portion of the Hensleys' property, concentrate[d] the flow at that point and caused extensive damages?

Appellants' Brief at 3 (unnecessary capitalization omitted).

In their first issue, Appellants challenge the trial court's finding that they failed to present sufficient evidence to establish every element of a negligence claim.  We consider the following relevant legal principles:

In order to hold a defendant liable for negligence, the plaintiff must prove the following four elements: (1) a legally recognized duty that the defendant conform to a standard of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff.

***Truax v. Roulhac***, 126 A.3d 991, 997 (Pa. Super. 2015) (*en banc*).

---

[7] Greene Countrie did not appeal from the judgment entered in Appellants' favor on its claim of unjust enrichment.  It has filed an appellee's brief in this appeal.

As stated above, Section 693.13(a) of the Dam Safety and Encroachments Act provides that the owner of any dam "shall have the legal duty to . . . monitor, operate and maintain the facility in a safe condition in accordance with the regulations, terms and conditions of permits, approved operating plans and orders of the department issued pursuant to this act[.]" 32 P.S. § 693.13(a)(1).

Finally, we emphasize that Pa.R.A.P. 2119(a) requires an appellant's argument to include "such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). This Court has held that under this rule, we may find an issue waived for failure to present a "developed, reasoned, supported, or even intelligible argument" and for failure to cite relevant case or statutory authority. *See Kelly v. Carman Corp.*, 229 A.3d 634, 656 (Pa. Super. 2020) (citations omitted).

Preliminarily, we observe that in announcing its verdict, the trial court's one-page decision stated solely that Appellants "failed to establish the elements for negligence contained in [their] counterclaim" for negligence. Decision, 9/13/24. The trial court did not provide its reasoning as to any element of a negligence claim.

In its opinion, the court observed, "There was much dispute regarding who was considered the owner of the dam at issue in this case." Trial Court Opinion, 1/16/25, at 8. However, the opinion does not definitively set forth the trial court's conclusion, if any, as to this issue. We reiterate that in their

post-trial motions, Appellants conceded that the Hensleys "were the owners of a portion of the dam wall, the emergency spillway, and the location of the prior discharge course for the natural flow of water from the dam," while the Wilsons continued to dispute whether a part of their property was a part of the dam. Post Trial Motions for Relief by Harvey and Nadine Hensley, 9/19/24, at ¶ 3; *see also* Post Trial Motions for Relief by Kyle and Ashley Wilson, 9/19/24, at ¶ 3.

In any event, the trial court opinion: (1) cited the 2019 property survey obtained by Ditchey, which "revealed that . . . Appellants were also dam owners;" and (2) separately stated, without any context, "Even assuming *arguendo* that Greene Countrie was the sole owner of the dam, their duties were to operate and maintain the dam in a safe manner. These duties do not create standards of care greater than the law of negligence in general." Trial Court Opinion, 1/16/25, at 3, 8. Reading these statements together, it is not clear whether the trial court found Appellants established the first prong of a negligence claim — that Greene Countrie bore a legally recognized duty or standard of care toward Appellants. **See Truax**, 126 A.3d at 997.

The trial court opinion did, however, address the second prong of a negligence claim — breach — and found Appellants "failed to establish any breach of a duty owed to" them. Trial Court Opinion, 1/16/25, at 9. We reiterate the trial court's above statement and set forth its additional discussion:

Even assuming *arguendo* that Greene Countrie was the sole owner of the dam, their duties were to operate and maintain the dam in a safe manner. These duties do not create standards of care greater than the law of negligence in general.

The evidence established that after the DEP notified Greene Countrie, and later . . . Appellants . . . , that the dam was unsafe, Greene Countrie investigated their options to remedy the issue. In response to the recommendations of the DEP and their engineer, and consideration of the funding necessary for this endeavor, Greene Countrie opted to perform a partial breach of the dam. Before it did so, Greene Countrie submitted a proposal to the DEP for their approval. The DEP approved their plans and later issued an order that held that Greene Countrie had complied with their requests and . . . the dam was no longer considered unsafe. Appellants took no action to protect the areas adjacent to their properties from erosion. A few years later, the DEP wrote to the parties, advised the parties that erosion was occurring and issued a corresponding violation. This court did not find sufficient evidence to establish that Greene Countrie had breached any duty to Appellants.

*Id*. (citation omitted and paragraph break added).

On appeal, Appellants focus on the first negligence prong — a duty of care. They argue extensively that Greene Countrie owed a duty of care to them based on: (1) an implied easement; as well as (2) Greene Countrie's assumption of a duty. *See* Appellants' Brief at 31-40.

As discussed above, however, the trial court did not address the duty prong, but instead addressed the breach prong, and found Greene Countrie made no breach of any duty. Appellants' entire discussion of the breach prong however, spanned five sentences as follows:

The subject of the breach of the duty to maintain the dam is not honestly disputed. The principle of *res ipsa loquitur* alone establishes breach of the duty. Had [Greene Countrie] maintained the dam, the lake would still be there for all to enjoy. In addition,

- 10 -

the testimony of [Greene Countrie'] own expert, . . . Ditchey, made it clear that there was no meaningful maintenance at least as far back as the year 2000. (Ditchey Expert Report . . . ). There simply was no evidence upon which a court could have found [Greene Countrie] took reasonable steps to maintain the dam and lake.

*Id*. at 41 (unnecessary capitalization omitted).

Appellants' above argument fails to cite or address any law. We conclude that it is so devoid of discussion of the trial evidence, trial court opinion, and applicable law that we must find waiver. *See* Pa.R.A.P. 2119(a); *see also Kelly*, 229 A.3d at 656. Appellants vaguely mention the doctrine of *res ipsa loquitur*, but do not discuss its substance nor explain, with reference to the trial evidence, why it applies to their claim. Appellants' allegation — that since 2000, Greene Countrie has not "meaningful[ly]" maintained, nor taken reasonable steps to maintain, the dam — ignores the trial court's discussion of Greene Countrie's years-long actions in working with the DEP and addressing the dam's condition. Appellants' Brief at 41. We remind Appellants' counsel that this "Court will not act as counsel and will not develop arguments on behalf of an appellant." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). We conclude Appellants have failed to present sufficient discussion, and thus no relief is due on their first issue.

In their second issue, Appellants argue the trial court erred in excluding testimony from Appellant Ashley Wilson, "an active real estate developer, familiar with the permitting process," about the cost to obtain permits to

- 11 -

restore her property. Appellants' Brief at 43. This evidence would have gone to the element of damages.

In light of our disposition above, finding no relief due with respect to the breach prong of Appellants' negligence claim, we need not reach this issue concerning damages. *See Truax*, 126 A.3d at 997 (stating a plaintiff must establish all four elements of a negligence claim in order to hold a defendant liable).

In their final issue, Appellants aver the trial court erred in failing to find a breach of the "common enemy rule."[8] They maintain that the uncontroverted trial evidence showed Greene Countrie "diverted the course of the stream onto a new portion of the Hensleys' property, concentrat[ing] the flow at that point and caus[ing] extensive damages." Appellants' Brief at 44.

This Court has stated:

> [T]he filing of a post-trial motion serves two critical functions in appellate practice. First, it preserves issues for appellate review, as grounds not specified in a post-trial motion are deemed waived. Second, it satisfies an essential procedural prerequisite to obtaining an appealable final judgment. Because post-trial motions must be filed within ten days after a decision in a non-jury trial, Pa.R.C.P. 227.1(c), the failure to meet this deadline will preclude entry of any final order and foreclose appellate review.

---

[8] *See Kowalski v. TOA PA V, L.P.*, 206 A.3d 1148, 1160 (Pa. Super. 2019) (explaining that in "Pennsylvania, specialized rules have been developed as to when an upper landowner may be liable for the effects of surface water running off its property[, and t]he law regards surface water as a common enemy which every proprietor must fight to get rid of as be he may").

*sDovin v. Honey Brook Golf Club L.P.*, 325 A.3d 1282, 1288 (Pa. Super. 2024) (citation omitted).

Appellants Wilsons' post-trial motion did not include any claim regarding the common enemy rule. As stated above, the copy of Appellants Hensleys' post-trial motion in the certified record is not complete; numbered paragraph #45 ends mid-sentence, and the next page is the certificate of service. *See Commonwealth v. Wright*, 314 A.3d 515, 527 n.6 (Pa. Super. 2024) (stating "it is an appellant's duty to ensure that the certified record is complete for purposes of review"); *see also* Post Trial Motions for Relief by Harvey and Nadine Hensley, 9/19/24, at unnumbered 8-9. The pages that we have make no mention of the common enemy rule, and we cannot review the missing pages of the motion to confirm whether the Hensleys have preserved this issue for appellate review. Nevertheless, we emphasize that on appeal, Appellants fail to state the place in the record where they have preserved a common enemy rule-claim, as required by our Rules of Appellate Procedure. *See* Pa.R.A.P. 2117(c)(1)-(3) (requiring statement of the case to specify: (1) place in the record where "the questions sought to be reviewed were raised;" (2) the method of raising them; and (3) "[t]he way in which they were passed upon by the court"), 2119(e) (requiring argument to "cross-reference to the page . . . of the statement of the case which set forth the information . . . required by Pa.R.A.P. 2117(c)). Under these circumstances, we conclude Appellants have waived this issue for our review. *See Dovin*, 325 A.3d at

1288; *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

In light of all the foregoing, we affirm the judgment entered in Greene Countrie's favor on Appellants' counterclaim of negligence, and in favor of Appellants on Greene Countrie's unjust enrichment claim.

Judgment affirmed.

President Judge Emeritus Stevens joins this Memorandum.

President Judge Lazarus files a Concurring Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/20/2025